UNION PACIFIC RAILROAD COMPANY *v.* BURKE.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 183.    Argued January 27,.1921.—Decided February 28, 1921.

An agreement between an interstate railroad company and a shipper to limit the carrier's liability upon an interstate shipment to a valuation stated in the bill of lading, will not relieve the carrier of its common-law obligation to pay the actual value in case of loss by its negligence if its schedules, filed with the Interstate Commerce Commission, provide but one rate applicable to the shipment. P. 321. *Reid* v. *American Express Co.*, 241 U. S. 544, distinguished. 178 App. Div. 783; 226 N. Y. 534, affirmed.

THIS case was submitted, in the first instance, to the Supreme Court of New York, Appellate Division, and

decided in favor of the defendant, the railroad company. The Court of Appeals of the State reversed the decision and directed the entry of the judgment for the plaintiff, which is here reviewed by certiorari—and affirmed. The case is stated in the opinion.

*Mr. Oscar R. Houston*, with whom *Mr. D. Roger Englar* was on the brief, for petitioner.

*Mr. Arthur W. Clement*, with whom *Mr. Wilson E. Tipple* was on the brief, for respondent.

Mr. JUSTICE CLARKE delivered the opinion of the court.

On March 10, 1915, S. Ontra & Brother delivered to the Pacific Mail Steamship Company at Yokohama, Japan, 56 cases of "Drawn work goods and Renaissance," consigned to their own order at New York, and received a bill of lading for ocean transportation to San Francisco and thence by the Southern Pacific Company and its connections, by rail, to destination. The property was delivered to the Southern Pacific Company and without new billing was carried to a junction with the line of the petitioner, the Union Pacific Railroad Company, and while in its custody was totally destroyed in a collision. The respondent, successor in interest to the consignor, claimed in this suit the right to recover the fair invoice value of the goods, $17,549.01, and the petitioner conceded his right to recover, but only to the amount of the agreed valuation of $100 per package, $5,600, to which it contended he was limited by the bill of lading. All of the facts are stipulated or proved by undisputed evidence.

The Appellate Division—First Department New York Supreme Court—rendered judgment in favor of respondent for $5,600, with interest and costs, but on appeal to the Court of Appeals of that State the judgment of the Appellate Division was reversed and an order was entered that

a judgment should be rendered by the Supreme Court in favor of respondent for $17,549.01, with interest and costs. The case is brought here on certiorari.

On the face of the bill of lading received at Yokohama was the notation: "Weight 26,404 lbs.; Ocean weight rate, 50¢, Freight $132.02. Rail, minimum carload weight 30,000 lbs., wgt. rate $1.25, Freight $375.00." (Thus the ocean and rail rates are separately stated, and the latter is $1.25 per 100 lbs., minimum carload.) On the back of the bill of lading were printed thirty-one conditions, the thirteenth of which contained the provision that, "It is expressly agreed that the goods named in this bill of lading are hereby valued at not exceeding $100.00 per package . . . and the liability of the Companies therefor, in case of the total loss of all or any of the said goods from any cause, shall not exceed $100.00 per package."

The petitioner was an interstate common carrier by rail at the time of the shipment involved and as such had filed with the Interstate Commerce Commission schedules of rates and regulations under which the property was moving at the time it was destroyed. By these schedules the carrier was bound, and to them it was limited, in contracting for traffic. *Southern Ry. Co.* v. *Prescott,* 240 U. S. 632, 638. The statute expressly provided that it should not charge or demand or collect or receive a greater or less or different compensation for the transportation of property or for any service in connection therewith than such as was specified in such schedules. (34 Stat. 587, § 6.)

In these schedules was included a rule, designated as Rule 9A, which reads: "Unless otherwise provided, when property is transported subject to the provisions of the Western Classification, the acceptance and use are required, respectively, of the 'Uniform Bill of Lading,' 'Straight' or 'Order' as shown on pages 87 to 90, inclusive."

For the purposes of this case, only, it is admitted, and

accepted by this court, that this rule 9A permitted and required that the property should be treated as moving east of San Francisco under the Uniform Bill of Lading, although, in fact, no other than the Yokohama bill of lading was issued. This Uniform Bill of Lading contained, among other conditions, the following: "*The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property* (being the bona-fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, *unless a lower value* has been represented in writing by the shipper or *has been agreed upon* or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation whether or not such loss or damage occurs from negligence."

Upon the facts thus stated the petitioner contends that the agreed valuation of $100 per package or case in the Yokohama bill of lading is necessarily imported into the Uniform Bill of Lading, becomes the valuation "agreed upon" within the terms and conditions quoted from that bill, and limits the respondent's recovery to that amount, $5,600, regardless of the value of the property and of the fact that it was lost by the carrier's negligence.

To this contention it is replied by the respondent: that it is admitted by the petitioner that its filed and published schedules contained but one rate applicable to the shipment as it was carried east of San Francisco; that that rate, $1.25 per 100 pounds minimum carload, was charged in the Yokohama bill of lading; and that, since no choice of rates was given, or could be given, to the shipper, any agreement, in form a valuation of the property, made for the purpose of limiting the carrier's liability to less than the real value thereof, in case of loss by negligence, was void and without effect.

In many cases, from the decision in *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, decided in 1884, to *Boston & Maine R. R.* v. *Piper*, 246 U. S. 439, decided in 1918, it has been declared to be the settled federal law that if a common carrier gives to a shipper the choice of two rates, the lower of them conditioned upon his agreeing to a stipulated valuation of his property in case of loss, even by the carrier's negligence, if the shipper makes such a choice, understandingly and freely, and names his valuation, he cannot thereafter recover more than the value which he thus places upon his property.

As a matter of legal distinction, estoppel is made the basis of this ruling—that, having accepted the benefit of the lower rate, in common honesty the shipper may not repudiate the conditions on which it was obtained—but the rule and the effect of it are clearly established.

The petitioner admits all this, but contends that it has never been held by this court that such choice of rates was essential to the validity of valuation agreements, and, arguing that they should be sustained unless shown to have been fraudulently or oppressively obtained, it affirms the validity of the agreement in the Yokohama bill of lading, and cites as a decisive authority *Reid* v. *American Express Co.*, 241 U. S. 544.

With this contention we cannot agree.

This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants (112 U. S. 331, 338 and 246 U. S. 439,444, *supra*), and valuation agreements have been sustained only on principles of estoppel and in carefully restricted cases where choice of rates was given—where "the rate was tied to the release." Thus, in the *Hart Case* (p. 343), it is said: "The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is

fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

And in the *Piper Case* it is said (p. 444): "In the previous decisions of this court upon the subject it has been said that the limited valuation for which a recovery may be had does not permit the carrier to defeat recovery because of losses arising from its own negligence, but serves to fix the amount of recovery upon an agreed valuation made in consideration of the lower rate stipulated to be paid for the service."

The *Reid Case, supra,* does not conflict with these decisions, for in that case the bill of lading containing the undervaluation, which was there sustained, expressly recited that the freight was adjusted on the basis of the agreed value and that the carrier's liability should not exceed that sum "unless a value in excess thereof be specially declared, and stated herein, and extra freight as may be agreed on paid." The bill of lading was for ocean carriage only, London to New York, to which, of course, the Interstate Commerce Act was not applicable, (36 Stat. 544, § 1; *Armour Packing Co.* v. *United States,* 209 U. S. 56, 78; *Cosmopolitan Shipping Co.* v. *Hamburg-American Packet Co.,* 13 I. C. C. 266) and the carrier, therefore, was in a position to tender to, and, by the quoted provision of the bill, did tender to, the shipper the choice of paying a higher rate and being subject to less restricted recovery in case of loss. The case was plainly within the scope of the prior decisions of this court upon the subject.

Thus this valuation rule, where choice is given to and ac-

cepted by a shipper, is, in effect, an exception to the common-law rule of liability of common carriers, and the latter rule remains in full effect as to all cases not falling within the scope of such exception.   Having but one applicable published rate east of San Francisco the petitioner did not give, and could not lawfully have given, the shipper a choice of rates, and therefore the stipulation of value in the Yokohama bill of lading, even if treated as imported into the Uniform Bill of Lading, cannot bring the case within the valuation exception, and the carrier's liability must be determined by the rules of the common law.   To allow the contention of the petitioner, would permit carriers to contract for partial exemption from the results of their own negligence without giving to shippers any compensating privilege.   Obviously such agreements could be made, only with the ignorant, the unwary or with persons deliberately deceived.   It results that the judgment of the Supreme Court of the State of New York, entered upon the order of the Court of Appeals of that State, must be

*Affirmed.*