ABRAHAM GLANZER and Another, Copartners, Trading as GLANZER BROS., Appellants, *v.* THE CUNARD STEAMSHIP COMPANY, LTD., Respondent.

First Department, November 27, 1925.

Carriers — carrier of goods — action against carrier to recover invoice value of part of shipment of raisins lost in transit — bill of lading stated that it was agreed property had specified value and that freight was fixed on that basis — bill of lading also limited recovery to value stated — value stated was only small fraction of actual value — said limitation of liability based on reduced freight rates is valid — consignees are bound by provision in bill of lading — bill of lading is prima facie proof that choice of rates was offered and that freight was fixed on value stated.

Consignees of raisins cannot recover the invoice value of a part of a shipment which was lost in transit, where the bill of lading stipulates that the value of each package receipted for does not exceed a certain amount unless otherwise stated in the bill, that the basis of the rate of freight is adjusted accordingly, and that under no circumstances shall the carrier be liable for or on a larger value than that stated in the bill, for the limitation of liability provided in the bill of lading is valid and enforcible since it appears that a choice of rates was offered and that the lower rate was made on the shipment in consideration of the stipulation as to value.

The consignees can recover only the value stipulated although that value is only a fractional part of the actual value of the goods lost and although they had nothing to do with the delivery of the goods and the issuance of the bill of lading.

It was not necessary for the carrier to introduce independent evidence to show that a choice of rates was offered, since the bill of lading was *prima facie* evidence of the fact that the rate charged was based upon the valuation of the property therein contained.

APPEAL by the plaintiffs, Abraham Glanzer and another, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 13th day of November, 1924, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, in favor of the plaintiffs.

The claim of the plaintiffs is that the damages allowed were insufficient.

*Teitelbaum & Jay* [*Louis Jay* of counsel], for the appellants.

*Lord, Day & Lord* [*Sherman Baldwin* of counsel], for the respondent.

MERRELL, J.:

The action was brought to recover the invoice value of 47 boxes of raisins, being a part of a shipment of 2,130 boxes shipped on the steamship *River Orontes* from Smyrna to New York. Two bills of lading were issued at the time of shipment, one covering 1,000 boxes of Sultana raisins, and the other bill of lading covering 1,130 boxes of black raisins. Upon arrival in New York the shipment of Sultana raisins was found to be 37 boxes short, and the shipment of black raisins 10 cases short. The total invoice value, as agreed upon between the parties in the Municipal Court, of the raisins lost was two hundred and fifty-six dollars and eighty cents. Plaintiffs sued to recover such amount from the defendant, a common carrier, which had undertaken to transmit said raisins from Smyrna to New York. The defendant claimed upon the trial in the Municipal Court, and was sustained in such claim by that court and by the Appellate Term affirming the judgment of the Municipal Court, that the liability of the defendant was limited by reason of the following clause contained in each of the bills of lading: " It is also mutually agreed   *   *   *   that the value of each package receipted for above does not exceed the sum of Twenty Shillings sterling, or Five Pounds per freight ton, whichever be the less, unless otherwise stated herein, on which basis the rate of freight is adjusted, and under no circumstances shall the carrier be liable for or on the basis of a larger value than this." It was conceded upon the trial that under said valuation clause the amount for which the defendant was liable because of the loss of said 47 cases at the valuation specified in said clause was sixteen dollars and fifty-eight cents, and that the freight which the shipper paid

on said goods amounted to three dollars and eighty-two cents. Upon such basis a recovery was had in the Municipal Court in the sum of twenty dollars and forty cents. In this amount the defendant conceded it was liable.

The plaintiffs, appellants, appealed to the Appellate Term from the judgment of the Municipal Court, and the Appellate Term affirmed the same with twenty-five dollars costs to be offset against the recovery. Thereafter the plaintiffs moved for a reargument or for leave to appeal to this court from the determination of the Appellate Term. This motion was denied, and subsequently an appeal was allowed by order of the presiding justice of this court. (See 212 App. Div. 809.)

It is the contention of the appellants that the clause contained in each of the bills of lading limiting the carrier's liability was invalid and unenforcible, and that under the common law the plaintiffs are entitled to recover the invoice value of the goods lost. The appellants rely upon the decision in *Union Pacific R. R. Co.* v. *Burke* (255 U. S. 317), in which case it was held that a contract limiting the common-law liability of a common carrier for the consequences of its own negligence was against public policy. Under the facts in that case the decision was unquestionably sound; but I think that case clearly differs from the case at bar, and a careful reading of the opinion in *Union Pacific R. R. Co.* v. *Burke* leads me to conclude that that decision supports in all respects the position of the respondent in the case at bar. In the *Burke* case the clause relied upon was as follows: " It is expressly agreed that the goods named in this bill of lading are hereby valued at not exceeding $100.00 per package  *  *  *  and the liability of the Companies therefor, in case of the total loss of all or any of the said goods from any cause, shall not exceed $100.00 per package."

In the *Burke* case there was but one possible rate available to the shipper, and there was no evidence that the shipper obtained a more favorable rate by agreeing to the valuation of the goods shipped and the liability of the carrier therefor in case of loss, and the United States court held that that clause constituted a stipulation exempting the carrier from liability for its own negligence, and was, therefore, invalid under the rules prevailing in the Federal courts. The distinction in the case at bar, it seems to me, lies in the fact that it is apparent that the valuation of the packages of raisins receipted for in the bills of lading in suit were upon the basis of adjusted freight rates; and I think it may clearly be inferred from the limiting clause contained in the bills of lading that the rate charged for transportation was made less by virtue of the provision in the clause limiting any recovery in case of loss to twenty shillings

sterling per package or five pounds per freight ton. That such a clause is entirely valid appears to have been distinctly held in the *Burke* case upon which the plaintiffs, appellants, herein rely. In the course of his opinion Mr. Justice CLARKE said, in *Union Pacific R. R. Co.* v. *Burke* (255 U. S. 317, 321): " This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants [*Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, 338 and *Boston & Maine R. R.* v. *Piper*, 246 U. S. 439, 444], and valuation agreements have been sustained only on principles of estoppel and in carefully restricted cases where choice of rates was given — where ' the rate was tied to the release.' "

It seems to me that the clause contained in the bills of lading in suit, " on which basis the rate of freight is adjusted," clearly means that a choice of rates was given to the shipper, and that " the rate was tied to the release," as suggested in the opinion of Mr. Justice CLARKE quoted above. In the course of his opinion in the *Burke* case, Mr. Justice CLARKE uses the following language defining the circumstances where a shipper would be bound by a limitation clause in a bill of lading:

" In many cases, from the decision in *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, decided in 1884, to *Boston & Maine R. R.* v. *Piper*, 246 U. S. 439, decided in 1918, it has been declared to be the settled Federal law that, if a common carrier gives to a shipper the choice of two rates, the lower of them conditioned upon his agreeing to a stipulated valuation of his property in case of loss, even by the carrier's negligence, if the shipper makes such a choice understandingly and freely, and names his valuation, he cannot thereafter recover more than the value which he thus places upon his property.

"As a matter of legal distinction, estoppel is made the basis of this ruling — that, having accepted the benefit of the lower rate, in common honesty the shipper may not repudiate the conditions on which it was obtained — but the rule and the effect of it are clearly established. * * *

" This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants (112 U. S. 331, 338 and 246 U. S. 439, 444, *supra*), and valuation agreements have been sustained only on principles of estoppel and in carefully restricted cases where choice of rates was given — where ' the rate was tied to the release.' Thus, in the *Hart* case (p. 343), it is said:

" ' The distinct ground of our decision in the case at bar is that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.'

"And in the *Piper* case it is said (p. 444):

" ' In the previous decisions of this court upon the subject it has been said that the limited valuation for which a recovery may be had does not permit the carrier to defeat recovery because of losses arising from its own negligence, but serves to fix the amount of recovery upon an agreed valuation made in consideration of the lower rate stipulated to be paid for the service.' "

The whole basis of the decision in the *Burke* case was the fact that there did not appear to be any compensating privilege to the shippers by virtue of the lesser freight rate charged, whereas, in the case at bar it appears very plainly from the statement contained in the clause that the basis upon which a recovery in case of loss was to be had was " the rate of freight " as adjusted.  Three years after the decision in the *Burke* case, and in 1923, in *American Railway Express Company* v. *Levee* (263 U. S. 19), the United States Supreme Court held a limitation of liability clause good where such limitation was by reason of the lesser rate charged for carrying the property.  In that case judgment was had for the plaintiff for the full amount of the value of a trunk and its contents. The judgment was ultimately reversed, holding the limitation clause to constitute a valid defense.  The limitat on clause in the *Levee* case was quite similar to the limitation clause in the bills of lading in suit, and was as follows: " In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less   *   *   * the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less."

It has been uniformly held, not only by the courts of this State but by the Federal courts, that a carrier may limit its liability for damages, even occasioned by its own negligence, by a contract fairly made with the shipper agreeing to a valuation of the property carried different from the full value, based on the condition of the carrier's liability only to the extent of the agreed valuation.

(*Hart* v. *Pennsylvania R. R. Co.*, [1884] 112 U. S. 331; *Adams Express Co.* v. *Croninger*, [1913] 226 id. 491; *Reid* v. *American Express Co.*, [1916] 241 id. 544; *D' Utassy* v. *Barrett*, [1916] 219 N. Y. 420; *Mariani Brothers, Inc.*, v. *Wilson Sons & Co., Ltd.*, [1919 1st Dept.] 188 App. Div. 617; *The Sarnia*, [1921 C. C. A. 2d Cir.], 278 Fed. 459, 462.)

The appellants take the position that they had nothing to do with the delivery of the goods to the defendant, respondent, for carriage. However, the only resort of the defendant, respondent, is by virtue of the contract contained in the bills of lading, and the consignee obtained no more rights than the shipper. The contract of carriage binds consignee, shipper and carrier alike.

The appellants insist that the burden of proof was upon the respondent to show that a choice of rates was offered to the shipper. I think the answer to this is that the clause contained in the bill of lading, at least inferentially, shows that there was a choice of rates given. It is stated therein that the valuation of the packages was on the basis upon which " the rate of freight is adjusted, and under no circumstances shall the carrier be liable for or on the basis of a larger value than this." It was conceded that the freight was paid at the rate of five dollars and fifty cents per freight ton of 2,000 pounds.

In *Leyland & Co.* v. *Hornblower* (256 Fed. 289, 293) it was said: " The plaintiff also claims in argument that the burden of proof is on the defendant to show that the rate charged the plaintiff was based on its minimum valuation of twenty pounds per package. So far as the matter has received any judicial consideration it has been held that a provision similar to that contained in the bill of lading in this case raises a presumption that the shipment was made upon the agreed valuation and that opportunity was afforded of shipping at a higher valuation by the payment of a higher rate, in the absence of evidence to the contrary. This is equivalent to saying that the bill of lading upon its face is *prima facie* evidence of all the facts that may be fairly and legally inferred from its terms.    *    *    *

" In the absence of proof to the contrary, it may be assumed, under the terms of the bill of lading, that the rate was based upon the agreed valuation, and that, if requested, the defendant would have written into the bill of lading the value given by the forwarders and charged the rate proportionate to that value. While it is true that no actual value was placed upon the automobile, yet by the terms of the bill of lading a value was assumed, and that this assumed value was far below the actual value of the automobile does not alone render the limitation invalid."

The bill of lading upon its face was *prima facie* evidence of the fact that the carriage rate charged was based upon the valuation of the property therein contained, and, as stated in the quotation above: " In the absence of proof to the contrary, it may be assumed, under the terms of the bill of lading, that the rate was based upon the agreed valuation, and that, if requested, the defendant would have written into the bill of lading the value given by the forwarders and charged the rate proportionate to that value." Concededly, the value of the packages of raisins at twenty shillings sterling or five pounds per freight ton was much less than the actual value of the goods. Upon such valuation the freight charged and paid was based The appellants, I think, are estopped from claiming any greater damages.

The determination of the Appellate Term should be affirmed, with costs to the respondent.

CLARKE, P. J., DOWLING, McAVOY and BURR, JJ., concur.

Determination affirmed, with costs.