## A. C. LAWRENCE LEATHER CO. v. COMPAGNIE GENERALE TRANSATLANTIQUE.*

Circuit Court of Appeals, Second Circuit.
April 4, 1927.

No. 242.

1. **Carriers** ⟵158(1)—Carriers may lawfully limit liability, but alternative rates for alternative liability limits must be in force at time of shipment.

It is lawful for carriers, by contract clauses fairly entered into and fair and reasonable in their provisions, to limit amounts for which they shall be liable; but alternative rates for the alternative limits of liability must be in force at time of shipment.

2. **Carriers** ⟵158(1)—Shipper, accepting lower rate for stated valuation, is estopped to claim greater damages.

Rule that, if carrier gives shipper choice of two rates, lower of which is conditioned on a stipulated valuation of property in case of loss, shipper choosing lower rate is bound to valuation named, is based on estoppel.

3. **Evidence** ⟵215(3)—Letter from carrier's chief of traffic to shipbrokers respecting rates held competent as admission on libel for loss of shipment.

Letter written by steamship carrier's chief of traffic to shipbrokers for shipment of green salt hides, during investigation as to loss of shipment, stating that wet salt hides were not carried under an ad valorem freight rate, but were always carried by weight, *held* properly received in evidence, on shipper's libel for loss of shipment, as an admission as to rates.

4. **Witnesses** ⟵37(1)—On libel for loss of shipment from France, court was not obliged to accept testimony of steamship carrier's New York employee as to choice of rates.

On shipper's libel for loss of shipment of green salt hides shipped from France, court was not obliged to accept testimony of steamship carrier's employee in its New York office, tending to show shipper's right of choice of rates, where his testimony showed lack of knowledge as to such matters at French office.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the A. C. Lawrence Leather Company against the Compagnie Générale Transatlantique. Decree for Libelant (12 F. [2d] 83), and respondent appeals. Affirmed.

*Certiorari denied 47 S. Ct. 770, 71 L. Ed. ——.

Joseph P. Nolan, of New York City (Edward J. Garity and Frank T. Hendl, both of New York City, of counsel), for appellant.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for appellee.

Before MANTON, HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The appellee shipped packages of green salt hides from Havre, France, on the appellant's steamship Penmorvah to the port of New York. The hides were never delivered. The bill of lading issued contained a provision as follows:

"Art. 11. In case of losses or irregularity in the delivery, for which they would be responsible, from any cause, or at any place whatever, the captain and the company can only be held to reimburse for each package lost, the intrinsic value at the loading port, calculated on the presentation of the original invoice, or upon the declaration on the bill of lading, without any profit, damages, commission, interest, etc. In default of declaration of value on the bill of lading, it shall not be allowed in any case more than one franc per cubic decimeter or per kilo, at the choice of the company, nor more than 1,000 francs per package. In case of damage or shortage for which they may be responsible, the captain and the company can only be held to pay an indemnity calculated pro rata on the sum to be paid in case of loss, according to the foregoing stipulations."

The appellant admits its responsibility to pay some damage, but contends that the amount it is to pay is governed by the French law and is limited by article 11 of the bill of lading to one franc per kilo. The appellee has recovered below upon the theory that article 11 did not afford the shipper a choice based upon a declared value and a reduced rate based upon an assumed valuation, and that it provides only for the amount of the loss the carrier will pay in case of a declaration and states the amount it will pay in the absence of declaration. Appellee contends that the limitation clause of one franc per kilo is void because there is no reciprocal alternative rate to the limitation of reimbursement, and it is therefore entitled to recover the value of the lost shipment.

[1, 2] It is lawful for carriers by contract clauses, if fairly entered into and if they be fair and reasonable in their provisions, to limit the amounts for which they shall be liable. It is, of course, the result of mutual agreement which imposes the limitation. The alternative rates for the alternative limits of liability must be in force at the time of the shipment. Union Pacific R. Co. v. Burke, 255 U. S. 317, 41 S. Ct. 283, 65 L. Ed. 656; The Kensington, 183 U. S. 263, 22 S. Ct. 102, 46 L. Ed. 190; Hart v. Penn. R. R. Co., 112 U. S. 331, 5 S. Ct. 151, 28 L. Ed. 717. The basis for enforcing the limitation of liability is upon the theory of estoppel. Union Pacific R. Co. v. Burke, supra. In the Burke Case, the question was whether choice of alternative rights was essential to a valid limitation. There a shipment was made from Japan to an interior point in the United States by steamship and rail carriers under a through ocean form of bill of lading. The shipment was delivered to the rail carrier at San Francisco and started overland without new billing and was entirely destroyed in a railroad collision. The owner sued for invoice value, and the carrier conceded liability, but contended the amount was limited to $100 per package pursuant to provision of the bill of lading. There, as here, the bill of lading omitted reference to a choice of or adjustment of rates based on that agreed valuation. The Supreme Court held that it was permissible for carriers to limit their liability to agreed values and that this right is based on estoppel. It exists only where a reciprocal benefit of choice of alternative adjustment of freight rate to value is tied to the release. Because in the Burke Case a rail carrier was concerned, it is argued by the appellant that as such it could have but one published freight rate; still we think it is authoritative and covers all carriers, whether by rail or ocean freight. Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094. In The Kensington, supra, a bill of lading provided that in no event was there to be a recovery of more than 50 francs per unit at which the package was to be valued unless an increased valuation be declared and extra freight paid, the court holding that the limitation in the clause to the words "in no event" was void as against public policy and as against the Harter Act (Comp. St. §§ 8029–8035), and that the alternative rate and recovery must be expressed. In U. S. Willow Furniture Co. v. La Compagnie Générale Transatlantique (C. C. A.) 271 F. 184, it affirmatively appeared that the French Line had and offered an alternative ad valorem freight rate for the commodity which was not used. That case is different, because here there was no alternative rate for salt hides. The court said that, inasmuch as no value had been declared

and no bundle of willow was worth as much as 1,000 francs, the libelant could recover the value at the port of shipment less what the injured goods realized in New York.

[3, 4] Below it was found as a fact that there was no choice of freight rates, based on valuation, open to the shipper. It also appears from a letter written by the chief of traffic of the appellant to ship brokers for this shipment that wet salt hides were never carried under an ad valorem freight rate and that such hides were always carried by weight. The objection that this letter was improperly received is without merit. It was written to the shipper during the investigation as to the loss and was an admission as to such rates. The court was not obliged to accept the testimony of the appellant's employee in its New York office, which tended to show the right of choice of rates. His testimony showed a lack of knowledge as to such matters at the Havre office. He was never connected with that office, and did not know what rates on hides prevailed there. There is ample evidence to support the conclusion reached by the District Judge.

Decree affirmed, with costs.