**FORT WORTH AND DENVER RAIL-WAY COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16304.

United States Court of Appeals Fifth Circuit.

March 28, 1957.

Thomas D. Magoffin, Barwise, Magoffin & Carrigan, Fort Worth, Tex., for appellant.

Clayton Bray, Asst. U. S. Atty., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The Commodity Credit Corporation, an agency of the United States, made shipments under Government bills of lading of cottonseed products to various consignees in Texas over the appellant railway company. These shipments were made under the Emergency Drought Relief Program of 1953 pursuant to 12 U.S.C.A. § 1148a–2(d). The commodities shipped were to be sold as livestock feed to farmers and ranchers at prices which were about one-half of the market value at the various points of delivery. Freight rates on such shipments were, by a Joint Quotation of the rail lines serving the drought area, subject to a reduction of fifty per cent. of the applicable tariff rates. Shortages occurred in nine shipments handled by the appellant. These shortages were of goods having a fair market value at destination of $1,101.31, and a sales price at destination of $597.-82. Of the nine shipments three were interstate and six were of shipments having both origin and destination in Texas. The appellant concedes liability for the amount of the sales price at destination. The United States claimed it was entitled to be paid the fair market value at destination of the shortages and brought suit in the District Court to vindicate its position. On stipulated facts the Court entered judgment for the United States. United States v. Fort Worth & Denver Railway Co., D.C.N.D.Tex.1956, 141 F. Supp. 381. The railway has appealed.

The Congress has expressly provided that property may be transported free or at reduced rates for the United States. 49 U.S.C.A. § 22. This enactment is the authority for the quoted rate applied to the shipments here considered. The measure of damages for loss of or damage to goods in interstate transportation is declared by the Cummins Amendment to be the full value, with a proviso that where the carrier has been authorized to establish a rate dependent upon value declared or agreed upon as the released value, the declaration shall be given the effect of limiting liability and recovery to an amount not exceeding the value so declared or released. 49 U.S.C.A. § 20 (11).

■ The appellant insists that the damages as to the shortages in the six intrastate shipments should have been measured by the law of Texas rather than under the Federal statute applicable to interstate shipments. The Government thinks the appellant is procluded from distinguishing between rules applicable to interstate and intrastate shipments, respectively, because the pretrial order stated the only issue as being whether the measure of damages is the fair market value at destination or the sales price of the commodities which were short. We do not believe that the record before us prevents our consideration of both rules, the Texas rule applicable to intrastate shipments, and the Federal law applicable to interstate shipments. However, we reach the conclusion that the Federal rule governing interstate shipments is more liberal to carriers than is the law of Texas as to intrastate shipments.

■ The appellant says that the common law rule permits the limiting of liability for loss or damage by agreement made for the purpose of affording the shipper the lower of two rates proportioned to the amount of risk. 8 Tex.Jur. 317, Carriers § 212; Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148,

57 L.Ed. 314, 44 L.R.A.,N.S., 257. Such may be, and we think is, the common law rule followed by many jurisdictions but we think it is not the common law rule prevailing in Texas. The appellant states that the common law rule to be followed in Texas as to intrastate shipments permits the limiting of liability and cites International & G. N. Ry. Co. v. Rathblath, Tex.Civ.App., 167 S.W. 751. There the shipment out of which the litigation arose was from New Orleans, Louisiana, to Calvert, Texas, a shipment interstate, and the Carmack Amendment, 49 U.S.C.A. § 20(11) was applied. The opinion makes reference to Southern Pacific Railway Co. v. Maddox, 75 Tex. 300, 12 S.W. 815, and cites it for the proposition that a common carrier is liable under the common law rule upon the basis of the value of the property at the place of destination, even though the contract in consideration of a reduced rate of transportation limited the carrier's liability. The Maddox case also involved an interstate shipment, but one made prior to the Cummins Amendment, so we think it declaratory of the common law rule prevailing in Texas.

■ Whether or not the common law rule as declared by the Texas Courts permitted the placing of contractual limits on liability fixing a standard of less than full value at destination, such rule must adapt itself to the legislative will. By statute it is provided:

"Railroad companies and other common carriers of goods, wares and merchandise, for hire, within this State, on land, or in boats or vessels on the waters entirely within this State, shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever. No special agreement made in contravention of this Article shall be valid; provided, however, that a requirement of notice or claim, consistent with the provisions of Article 5546 of the Revised Civil Statutes of Texas, 1925, as a condition precedent to the enforcement of any claim for loss, damage and delay, or either or any of them, whether inserted in a bill of lading or other contract or arrangement for carriage, or otherwise provided, shall be valid and is not hereby prohibited. Act Dec. 4, 1863, p. 7; G.L. vol. 5, p. 661; Acts 1941, 47th Leg. p. 805, ch. 500, § 1." Vernon's Ann.Civ.St. Art. 883.

In a recent decision applying this statute and declaring the Texas law of common carrier liability, it is said:

"Art. 883 of Vernon's Tex.Civ. Stats. provides that common carriers for hire within this State shall not limit or restrict in any manner whatsoever their liability as it exists at common law and that no agreement made in contravention thereof shall be valid. At common law there is an implied agreement on the part of common carriers for hire to carry safely the goods entrusted to them for transportation and they are held to a very strict accountability for loss of or failure to deliver goods received by them for carriage, being generally liable as an insurer for all losses and injuries except such as arise from an act of God or of the public enemy, from the negligence of the shipper, or from the inherent nature or vice of the property shipped. 8 Tex.Jur., p. 217, § 140 and authorities; 13 C.J.S., Carriers, § 71, p. 131, and authorities; 9 Am. Jur., p. 813, § 661; and authorities." Rogers v. Crespi & Co., Tex.Civ. App., 259 S.W.2d 928, 930.

■ The appellant admits that there must be an agreement limiting the recovery in consideration of the reduced rate, and concedes that this requirement must be met both as to the interstate and the intrastate shipments. This contract, appellant urges, may be either express or implied. The issuance of the bills of lading, indorsed with a legend showing

they covered drought relief shipments and referring to the Quotation as authority for the reduced rate, is claimed by appellant to be an agreement whereby it was understood that liability would be no more than the price at which the commodities were to be sold at destination. By the terms of the Quotation it was to become an agreement between the Government and a carrier when a shipment was made under its terms but there is nothing in either the Quotation or the bill of lading that restricts the liability of the carrier. There can be a reduced rate without a limitation of liability but there cannot be a limitation of liability, under the provision here considered, without a reduction of rate. Here the lower rate was not made in consideration of any agreement relating to liability. A situation did not exist where "the rate was tied to the release". Union Pacific Railroad Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 284, 65 L.Ed. 656; The Ansaldo San Giorgio v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016.

The amount of damages provided by § 20(11) is the full actual loss, damage or injury to such property at destination. Chicago, Milwaukee & St. Paul Railway Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801; Illinois Central Railroad Co. v. Crail, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699, 67 A.L.R. 1423; St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral Commercial Do Rio De Janeiro, 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201. The loss is measured by market value. Chicago, Milwaukee & St. Paul Railway Co. v. McCaull-Dinsmore Co., supra; Barrett v. Van Pelt, 268 U.S. 85, 45 S.Ct. 437, 69 L. Ed. 857. The Second Circuit has affirmed a judgment based on market value of potatoes at destination where the shipment was sent as a gift by the United States to a state hospital. The potatoes were purchased by the Government as a part of its Price Support Program. In the affirming opinion it was observed that the carrier should not receive the benefit of the donation intended for the hospital. United States v. New York, N. H. & H. R. Co., 2d Cir., 1954, 211 F.2d 404. We are of the opinion that the rule of damage measurement by fair market value at destination should be followed here.

The appellant carrier cites and urges that we follow the decision of the District Court for the District of Minnesota in United States v. Northern Pacific Ry. Co., 116 F.Supp. 277, holding that the sale price fixed the amount of recoverable damages on a shipment of potatoes acquired by the Government under the Price Support Program and sold at one-sixth of market value. This decision is criticized in United States v. New York, N. H. & H. R. Co., supra, and in a recent Texas case it is referred to as "the only case called to our attention which in our opinion varies the settled rule." Texas & New Orleans Railroad Co. v. H. Rouw Co., Tex.Civ.App., 271 S.W.2d 666, 669. The correct rule was applied by the District Court. Its judgment is

Affirmed.

HUTCHESON, Chief Judge (concurring specially).

I concur in the affirmance of the judgment and in the reasons given in the opinion therefor.

Because, however, it seems quite clear to me that the claim of the carrier proceeds upon a false assumption, and it is, therefore, wholly untenable on its face, I feel that I should briefly say so.

This assumption is that, because the United States, in the public interest of affording relief to distressed farmers, has made provision to sell the seed to them at a loss, the carrier should be treated as the substituted beneficiary, though there is no proof or claim that the United States could supply additional seed for the purpose without additional loss.