William NEMCIK, Cedelia Nemcik, and the conjugal partnership by them constituted, Plaintiffs,

v.

OLYMPO TRANSPORT CO. OF PUERTO RICO, INC., Defendant.

Civ. No. 90–2387 (JAF).

United States District Court, D. Puerto Rico.

Dec. 31, 1991.

Federico Lora–López, San Juan, P.R., for plaintiffs.

Jorge J. De la Torre, San Juan, P.R., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR ENTRY OF JUDGMENT

FUSTE, District Judge.

## I.

This case was tried non-jury on December 26, 1991. The same involves a cargo claim on miscellaneous household goods and personal property shipped by plaintiffs from Puerto Rico to Florida. The goods were turned over for transportation to Olympo Transport Co. of Puerto Rico, Inc. ("Olympo"), a non-vessel operating common carrier, on September 11, 1989. Subsequently, the goods were shipped by Olympo on a container and turned them over to Ocean Line of Florida, a marine common carrier tug and barge outfit, which transported the same under their own bill of lading. The cargo was lost at sea and the claim ensued. Jurisdiction is based on 28 U.S.C. § 1337.

William and Cedelia Nemcik are retired senior citizens. In early September 1989, the Nemciks decided to sell their Puerto Rico home and relocate in Florida. A number of their belongings were passed to their children and the remaining were to be taken by them to Florida. Mr. Nemcik arranged on the telephone with Olympo to have them pick up those household goods and personal belongings for transportation. On September 11, 1989, an Olympo truck driver visited the Nemciks and took possession of thirty-four boxes of goods and eight suitcases of clothing. *See* Plaintiffs' Exhibit 1. A proforma, green-colored bill of lading or receipt was issued by the truck driver. No explanation was given to the Nemciks on tariffs, options, insurance, and the like. As a matter of fact, the Nemciks

had consented to a transportation contract on the basis of a price quotation of about $500, all inclusive.[1] The Nemciks specifically deny having received different shipment options regarding higher or lower freight rates with or without insurance. As a matter of fact, the lack of options remains uncontradicted. Defendant's evidence failed to show that freight rate options were available or that insurance was or was not available. There is no evidence that any kind of reasonable choice was offered to Olympo's clients.

The Nemciks' boxes and suitcases left Puerto Rico on October 23, 1989. Olympo contracted the services of Ocean Line of North Florida. *See* Defendant's Exhibit 2. The goods were shipped along with other parcels entrusted for transportation to Olympo in a container ICSU 124453–4, with a total weight of 15,800 pounds.[2] Olympo named itself as shipper and consignee in the Ocean Line bill of lading. We note that Olympo shipped under a flat freight rate of $920 per container. The goods were declared as "said to contain freight all kinds." Olympo insured the load for $75,000.

The Nemciks' goods never arrived at destination. The container in question was lost in transit. Bad weather was claimed; however, the court received no legally-sufficient evidence to establish that indeed bad weather was the cause of loss. We note that defendant's evidence failed to disclose that indeed the Nemciks' shipment was part of the load in container ICSU 124453–4. The trailer manifest showing the composition of the container load was not presented in court at all.

After October 23, 1989, Olympo claimed that the Nemciks' goods were lost. At this time, the Nemciks were asked to itemize the content of the shipment. Upon receiving a listing of lost goods with a quoted value of $42,049, Olympo decided to claim the benefit of their $50 per shipment limitation contained in their tariff. *See* Defendant's Exhibit 4, Domestic Off–Shore Freight Tariff # 1, original page 17, Rule 7(B)(1). Curiously enough, Olympo in turn pressed their own claim against Ocean Line, claiming the full value of the shipment, on the basis of a $75,000 insured value. This claim is pending resolution before another judge in this court.

Even though the green-colored receipt handed over by the truck driver to the Nemciks mentions in very small print the $50 limitation per shipment, the documents and the evidence show that the Nemciks did not sign nor were they asked to explicitly adopt such tariff limitation.

The tariff filed by Olympo with the Federal Maritime Commission contains only one tariff for household goods and personal belongings applicable to traffic between Puerto Rico and Florida and vice-versa. The tariff calls for a freight charge of $1.45 per cubic foot (CFT) or 19.34 cents per one-hundred pounds (CWT), take it or leave it.[3] *See* Defendant's Exhibit 4, Section 3, Northbound South Atlantic Commodity Rates applying to carrier's terminals in Jacksonville, Miami, Florida, from carrier terminals in Puerto Rico. Page 42, Item 2145.

## II.

Both parties claim that First Circuit case law favors their position. Both plaintiffs and defendant rely on *Antilles Insurance Co. v. Transconex, Inc.*, 862 F.2d 391 (1st Cir.1988), as authority for their position on the applicability or not of the $50 limitation per shipment. This case, as *Antilles*, is governed by The Harter Act, 46 U.S.C.App.

1. The defendant's evidence shows that the charged price was $750 on the basis of a tariff ocean freight of $1.45 per cubic foot.

2. The Nemciks' shipment weighed about 3,000 pounds.

3. An examination of the tariff confirms that household goods and personal effects have no alternate higher rate at all, irrespective of the tariff section applicable to the different geographic areas of Olympo's authorized operations. For example, Tariff section 1, applying to cargo movements southbound from Florida to Puerto Rico, contemplates only one charge. *See* Item 460 ($2.10 per cubic foot (CFT)). In reference to cargo movements from carrier's terminal in New York to Puerto Rico, only one tariff appears published at 2.50 per cubic foot, page 40, Tariff, Item 1012.

§§ 190, *et seq.*, and it is correct to state that under the *Antilles* rationale, a $50 limitation is valid when a consignee, having chosen a released value rate that relieved the carrier of all but a small dollar amount, had insured the goods, collected from the underwriter, and the latter sued the carrier. The rationale for such a limitation is one of principle. *Antilles*, 862 F.2d at 393. Where choice is given to and accepted by a shipper, the liability of the common carrier is modified and the cargo interest is not allowed to back out of its choice and its economic consequences.

 However, there are exceptions to such rule. *Antilles* so recognizes, specially when the facts of a given case fall within the parameters of *Union Pac. R.R. Co. v. Burke*, 255 U.S. 317, 321, 41 S.Ct. 283, 284, 65 L.Ed. 656 (1921). It is settled law that if a carrier gives the cargo interest the choice of two rates, the lower rate conditioned upon his agreeing to a stipulated low value in case of actionable loss, once the choice is made, understandingly and freely, he cannot thereafter recover more than the value so stipulated. Estoppel is made the basis of the rule. He who accepts the benefit of the lower rate in honesty cannot repudiate it later. In the present case, however, we have found that the plaintiffs were not actually given the choice of two tariffs. As a matter of fact, we have found that no such choice exists in the applicable tariff item for northbound cargo to Florida. Moreover, the record is devoid of any evidence on Olympo's sales efforts to the Nemciks, encouraging them to protect their shipment by alternate rates or insurance.

██ One more item must be mentioned. We find that as a matter of law, the insurance offer contained in the tariff, the premium being a two percent additional charge,[4] is not the alternate freight rate which the Nemciks may have availed themselves of to escape the limitation. *Federal Insurance Co. v. Transconex*, 430 F.Supp.

290, 296 (D.P.R.1976). In the absence of a valid, tariff-supported, specific alternate higher freight rate or *ad valorem* rate, notwithstanding the carrier's offer to place insurance, the limitation clause is without effect. Where no choice for special or alternate rate is made available to the shipper so that such cargo interest makes an informed decision, the limitation clause is invalid under Section 1 of The Harter Act, 46 U.S.C.App. § 190.

### III.

Having found that the $50 limitation per shipment is invalid under the particular facts of this case, there only remains to decide the amount of damages, or the amount of compensation, to which plaintiffs are entitled.

The plaintiffs claim $42,049 as their best assessment of replacement cost. The defendant did not seriously challenge the estimate. We have done independent analysis and find no exaggeration of value. The Nemciks appear honest senior citizens. Had there been a patently frivolous monetary claim, we are sure defendants would have brought expert assessment to place value in its proper perspective. We, thus, accept the unchallenged valuation made by the Nemciks.[5]

### ORDER FOR ENTRY OF JUDGMENT

On the basis of the above, judgment will be entered on behalf of plaintiffs and against defendant Olympo in the amount of $42,049.00, less freight charges outstanding of $750.00, for a total of $41,299.00. Each party will bear its costs and fees.

IT IS SO ORDERED.

---

4. *See* Defendant's Exhibit 4, Tariff, page 17, Rule 7.

5. Olympo continues to litigate against Ocean Line to recover full value of the loss. It would be ironic and unfair that they succeed, as we are sure they will, and discharge their obligation by paying the Nemciks only $50. This is not the kind of result that the law of common carriage favors.