The CAPITAL NATIONAL BANK IN AUSTIN, Appellant,

v.

L. B. WOOTTON, Appellee.

No. 11100.

Court of Civil Appeals of Texas.

Austin.

June 19, 1963.

Rehearing Denied July 10, 1963.

Clark, Thomas, Harris, Denius & Winters, Wallace A. McLean, James H. Keahey, Austin, for appellant.

Terry L. Jacks, San Marcos, for appellee.

HUGHES, Justice.

The Capital National Bank in Austin sued appellee, L. B. Wootton, to recover the proceeds of a check in the sum of $276.60 drawn by the City of Austin against its account in the appellant bank in favor of appellee as payee which the bank paid to appellee.

Trial was non-jury. Judgment went against the bank. There is no statement of facts. The case is before us on findings of fact made by the Trial Court. The substance of such findings follow:

1. On September 25, 1961, the City of Austin issued its check, No. 7215, payable to the order of appellee for $276.60, drawn on its account in the appellant bank. The special account on which this check was drawn was denominated, "Brackenridge Hospital Refund Account."

2. By letter dated September 28, 1961, the office manager, Mrs. Nell Bartley, for such hospital requested the bank to stop payment of such check. This letter was duly received by the bank.

3. On September 30, 1961, Mr. P. T. O'Brien, for the hospital, wrote appellee requesting him to return check No. 7215 to the hospital.

4. On October 15, 1961, appellee received check No. 7215 through the mail. He "in good faith believed the stop payment order to have been rescinded."

5. On October 16, 1961, appellee, on advice of counsel, presented the check to the bank for payment and one of its tellers "through his admitted negligence, oversight and because he did not consult the stop payment list" paid appellee the amount of the check.

6. The City of Austin refused to allow this check to be charged against its account and insisted upon its rights under the stop payment order.

7. After demand by the bank, appellee refused to refund the proceeds of the check.

8. There is no evidence that appellee had or had not changed his position, presumably in regard to his rights against the City of Austin.

9. There is neither pleading nor proof that the City of Austin was or was not entitled to recover the proceeds of the check from appellee.

The Trial Court concluded that appellee was a holder in good faith of the check when it was paid, and that "When a bank over-looks a stop-payment order on a check and pays the check to the payee, the bank cannot recover the proceeds of the check unless it pleads and proves that the payee was unjustly enriched or that the payee was guilty of fraud, or that the payee was not a good faith holder of the check."

The bank was guilty of negligence in overlooking the stop payment order and in paying appellee the amount of the check. This negligence, however, is not shown to have injured appellee in any respect. The duty was upon appellee to plead and prove his injury, if any, arising from appellant's negligence. This is a matter peculiarly within his knowledge. Rule 94, Texas Rules of Civil Procedure; Red Ball Motor Freight Co. Inc. v. Bailey, Tex. Civ.App., 332 S.W.2d 411, Amarillo C.C.A., writ ref., n. r. e.; Natl. Loan & Exchange Bank of Columbia v. Lachovitz, 131 S.C. 432, 128 S.E. 10, 39 A.L.R. 1237.

Art. 342–712, Vol. 1A, Vernon's Ann.Civ. St., of the Texas Banking Code of 1943 provides, in part, that, "The person primarily obligated to pay an item may at any time prior to presentment thereof for payment instruct the bank by or through which the same is payable not to pay such item, and shall each sixty (60) days thereafter renew such instructions. No bank shall be legally obligated to regard such instructions or renewals unless the same are in writing, dated, signed, and describe the item with certainty. After receipt of stop payment instructions in the form above provided prior to presentment for payment of the item, a bank shall exercise reasonable dili-

gence not to pay the same, and if it thereafter negligently pays the item it shall be liable for the damages sustained in a sum not exceeding the amount of such item." [1]

Under this statute it is obvious that the bank was under no legal obligation to pay appellee the proceeds of the check upon its presentment for payment on October 16. As to the bank, appellee received from it $276.60 which he was not legally entitled to receive. This creates no equity in his behalf, rather it establishes, as to the bank, his lack of equity. All equities, in our opinion, lie with the bank. It has, so far as this record discloses, committed a harmless act of negligence with a resultant loss of $276.60. Restitution should be made unless some inexorable rule of law intervenes.

■ The right to recover money paid under a mistake of fact caused by carelessness, negligence or forgetfulness is too well established to be arguable. See 44 Tex.Jur. 2d, Sec. 77, p. 750. "The reason for the rule is that the payee ought not to retain what in conscience does not belong to him as against the person to whom in conscience it does belong." Id., p. 752.[2]

The conclusion of the Trial Court that appellee was not shown to have been unjustly enriched by having received the proceeds of check 7215 is refuted by the record insofar as such payment to him by the bank is concerned. He has the bank's money, and he has no right to the bank's money. This is enrichment; it is also unjust.

■ A check of itself is not an assignment of any part of the funds to the credit of a drawer with the bank, and the bank is not liable to the holder, unless or until it accepts or certifies the check. Sec. 189, Art. 5947, V.A.C.S. The appellant bank here accepted the check, but it did so under a mistake of fact. It is relief from this mistake which it now seeks.

Appellee emphasizes and strongly relies upon the Trial Court's legal conclusion that he "was a good faith holder" when the check was paid by the bank.

■ We are unable to attach legal significance to this conclusion. There is no finding that he paid value for the check. Hence, he was not a bona fide holder for value, and he was not entitled to the rights or equities to which such holders are entitled. He was not a holder in due course because he was the payee in the instrument. Williams v. Jones, 122 Tex. 61, 52 S.W.2d 256.

■ We presume that the conclusion that appellee held the check in good faith was predicated on the Court's finding that he in good faith believed the stop-payment order to have been rescinded when the check was presented for payment. This finding, no doubt, would exonerate appellee of mala fides in collecting the check, but it would not alter the fact that he was wrong in his belief and that such order had not been rescinded.

It is our opinion that the Court's conclusion that appellee was a good faith holder of the check is legally irrelevant.

Appellee cites the case of Huffman v. Farmer's Nat. Bank, Tex.Civ.App., 10 S.W. 2d 753, (1928), Eastland Civil Appeals, no motion for rehearing filed, as authoritative in his behalf. In that case Huffman executed and delivered a check to Russell on the Farmer's National Bank of Cross

<hr>

1. Art. 342–701, Vol. 1A, provides in part, "As used in this chapter the following terms, unless otherwise clearly indicated by the context, have the meanings specified below:

"(a) The term 'bank' includes any person, firm or corporation engaged in the business of receiving and paying deposits. To the extent

that the Legislature has authority to legislate relative to such banks the term includes national banks and banks outside this State."

2. See authorities cited in footnote 184, p. 307, Vol. 32, Texas Law Review. See footnote 3, post.

Plains. Huffman, before the check was presented for payment, instructed the bank not to pay it. The bank, thereafter, having orally advised another bank in Baird that Huffman had sufficient money on deposit to pay the check, paid it and charged it to Huffman's account. Huffman sued the Cross Plains Bank for the amount of the check and Russell was impleaded. The Court, in its opinion, states that the proceeds of the check were deposited to the account of Russell. It also recites that Russell "sold" the check to the First State Bank of Baird. The Court then states that the "check was presented by a bona fide holder in the due course of business to the defendant bank for payment." The Court held, "The payment, under the circumstances, was purely a voluntary act on the part of the bank, and it cannot recover the funds so paid out from the original payee, Russell, or any one else."

This case is unsatisfactory to us for the reason that it is not clear whose right to the money the Court was adjudicating. If, as the Court states, the payee "sold" the check to the Baird Bank, then it was its money, and not the payees', which was deposited to the account of payee. This would create a factual and legal situation different from the case before us, and as to which we express no opinion.

Such case is distinguishable for the reason that there the Cross Plains Bank consciously and deliberately chose to pay the check rather than to welsh on its implied promise of payment to the Baird Bank. This, the Court held, was voluntary action on its part. No such facts are present here.

3. In 32 Texas Law Review 259, there is an Article by Professors Keith E. Morrison and Joseph T. Sneed of the University Law faculty (1954) entitled Bank Collections: The Stop-Payment Transaction—A comparative study—in which the authors have made a panoramic discussion of the problems in this area. A complete analysis of Art. 342–712, infra, is given, and we are indebted to their work. The following quotation from this Article, we believe, correctly interprets the Act:

Such case is also distinguishable here because it was decided long prior to the enactment of Art. 342–712, supra (1943), which fixes the liability of a bank for negligently violating a stop-payment order regarding a check. This liability is for "the damages sustained" in an amount not to exceed the amount of the check.[3]

It is our opinion that the Trial Court erred in rendering judgment against appellant. We, therefore, reverse the judgment of the Trial Court and remand this cause in order that appellee may be given an opportunity to plead and prove his damages, failing in which, judgment should be rendered for appellant.

Reversed and remanded.

"Although there are no cases since the adoption of the Texas Act determining the extent to which the drawee bank is entitled to recover against prior parties, it also appears that the position of the drawee bank is favorable under the Texas Act in order to prevent unjust enrichment to third parties and unnecessary loss to the drawee bank."