The **FIRST–WICHITA NATIONAL BANK,**
Appellant,

v.

Bruce M. **STEED et al., d/b/a Steed Motor Company, Appellees.**

No. 16478.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 24, 1964.

Stayton M. Bonner, Wichita Falls, for appellant.

Anderson & Connell, and Jack Connell, Wichita Falls, for appellees.

MASSEY, Chief Justice.

██ Unlike the law in certain other states, a bank in Texas, which through its own negligence or mistake delivers to *the payee named on a check* the amount for which it was drawn, at a time when the bank should not have paid the check (because the drawer had executed a "stop-payment" order, did not have an account, etc.), is entitled to maintain and recover

upon an action for restitution of and from the payee, in an amount limited only to the extent that benefits have been received by the payee at the expense of the bank. (Emphasis supplied.) The theory is that the party who received the benefits was unjustly enriched thereby, and as of the moment when the benefits were mistakenly or negligently conferred the law does not look beyond him who received the same in the determination of whether he was unjustly enriched. At and after such time, however, in the event an innocent payee has so changed his position in good faith, trust and belief of the validity of the payment that either he or the payor bank must suffer loss, the fact that the bank has been negligent in creating the situation does become important in that the bank in turn becomes liable in damages to the innocent payee for his resultant loss due to the change of position. See Restatement of the Law, Restitution, p. 232, "Mistake, Including Fraud", § 59, "Lack of Care by Transferor".

In a case based upon circumstances of considerable analogy, the Austin Court of Civil Appeals rendered a decision in complete accord with what we have stated in the preceding paragraph. The Austin Court found additional support to be existent for the payee's right to recover damages from the bank under Art. 342–712, Vol. 1A, Vernon's Ann.Civ.St., of the Texas Banking Code of 1943. Capital National Bank in Austin v. Wootton, 1963 (Tex.Civ.App., Austin), 369 S.W.2d 475, writ dism.

Of particular importance in the Wootton case, supra, was recognition of the fact that in Texas the payee was not a "holder in due course" because he was the payee named in the instrument. In other words, the check not having been negotiated it was subject to the same defenses as if nonnegotiable and would be dischargeable by any act which would discharge a simple contract for payment of money. See Texas' Negotiable Instruments Act, Art. 5935 (§§ 51–59, incl. of the Act). See cases under 6 Tex. Dig., Bills & Notes, "Due course of business".

Giving consideration to the statement of facts and findings of the jury on the special issues submitted, the case under examination may be briefly stated. In making such statement the First-Wichita National Bank of Wichita Falls, appellant herein, will be referred to as the bank,—the appellees, Bruce M. and Thad Steed, d/b/a Steed Motor Company, will be referred to as the payee and also as the motor company and treated as inanimate,—and the drawer of the check, one Herman F. Gumpert, will be referred to by name.

On or about July 23, 1960, Gumpert, having some $4,800.00 on deposit in his checking account at the bank, entered into a transaction with the motor company. By the terms of the transaction he delivered a "trade-in" automobile, a check for $350.00, and an installment note for $2,000.00 to the motor company, receiving in exchange a new or nearly new Rambler automobile. The $2,000.00 note was secured by a chattel mortgage on the Rambler automobile. This occurred on a week end. Before banking hours on the morning of Monday, July 25, 1960, Gumpert decided that he wanted to rescind the transaction,—by agreement if possible. He went to the used car lot of the motor company, but when he was unable to find the salesman with whom he had dealt he told no one else that he wanted to cancel the deal. He did, however, go to the bank and execute a "stop-payment" order on the $350.00 check; then, in an abundance of caution, he withdrew the bulk of his money on deposit so that only $119.10 remained in his account. Apparently he continued to use the Rambler automobile.

Afterward, but on the same morning of Monday, July 25, 1960, the motor company, payee on the check, reasonably anticipating that payment would be stopped, but not that such had already occurred and in ignorance of the fact that it had occurred, presented the check for payment at the window of teller Hanson. The bank had not exercised reasonable diligence to notify the tellers that a "stop-payment" order had been entered on the $350.00 check, and Hanson did

not have knowledge of the fact nor should he have known the fact in the exercise of reasonable diligence.

Several days later the payee motor company first learned that Gumpert had executed the "stop-payment" order and that the bank had paid the $350.00 as the result of inadvertence or mistake. (There is absolutely no evidence to the contrary, and we consider that there is no question but that payment was the result of negligence or mistake on the part of the bank.) Discovery on the part of the motor company resulted from a telephone call from a bank official. The motor company advised that Gumpert would be contacted and an attempt made to satisfy him so that he would pay $350.00 to the bank. Obviously Gumpert was never mollified.

Since he had not delivered the title on the "trade-in" automobile, Gumbert was sued by the motor company for specific performance. By the time this case came to trial it appears that Gumpert had defaulted on an installment payment on the $2,000.00 note, so a count thereon was added to the suit of the motor company and judgment for debt and mortgage foreclosure was sought as well as judgment for specific performance. Though there is some question thereof it appears that the bank agreed with the motor company that said company could add to its suit (for the benefit of the bank) a count for the $350.00 check, just as though there had been no payment thereof.

As result of this litigation a judgment was rendered in behalf of the motor company for foreclosure of the mortgage on the Rambler, for title to Gumpert's "trade-in" automobile, and for $350.00. The record does not disclose any information as to value of the Rambler as delivered to Gumpert, or as received, and we are ignorant as to the amount therefor realized by the motor company on the foreclosure proceedings. The fact that we might express curiosity in such regard should not be construed to mean that we deem it of any importance at law. Certainly it is immaterial to our disposition of the instant appeal.

Not being able to obtain restitution of the $350.00 from the motor company, the bank eventually filed suit against it to obtain a judgment therefor. Nowhere in the pleadings of the motor company did it seek any damages (in the event the decision should be in behalf of the bank) and nowhere in the record was there any evidence of any damages sustained by the motor company as the result of any change of position, loss, etc. resulting by reason of the receipt of the $350.00 on July 25, 1960.

It is our opinion that the motor company was legally obliged to return the $350.00, disregarding offsetting right to damages it might have against the bank. The motor company had the right to seek judgment of and from Gumpert in its own behalf by its suit against him. It would be immaterial whether the bank ever agreed that the motor company could add a count therefor to its suit against Gumpert. There was no consideration for any agreement that the motor company might hold the $350.00 in trust if collected from Gumpert. It matters not whether the motor company will ever be able to "realize" upon its judgment through execution levied against Gumpert.

Our understanding of the law, at least as applicable in Texas, is in accord with our statement in the first paragraph of this opinion, which, though paraphrased, is substantially the recitation of Section 59 of the Restatement of the Law, Restitution. Section 59 is seemingly contradictory to Sections 29 to 38, inc., under Topic 2, "Mistake of Fact", Title B, "Special Rules for Bills and Notes", until one takes recognition of the fact that in Texas the named payee in a check which has not been negotiated is not considered a "holder in due course". Upon such recognition the seeming contradiction disappears.

Although it followed a different course of reasoning, or at least different authorities, the Austin Court of Civil Appeals appears to have reached an identical conclusion upon the applicable law of our state in Capital

National Bank in Austin v. Wootton, supra. In that case a judgment for the defendant payee was reversed, but the court remanded the cause to the trial court in order to give the payee an opportunity to plead and prove his damages, if any. There had been neither pleading nor proof thereof on the original trial. Here we have a like situation with a similar result, i. e., the bank is entitled to its judgment on the theory of restitution, but the payee would be entitled to damages, if any there may be, if pleaded and proved.

Judgment is reversed and the cause is remanded to the trial court in order that the payee motor company (appellees) may be given an opportunity to plead and prove damages.