PACIFIC MOLASSES COMPANY, Appellant,

v.

Thomas GRAVES et al., Appellee.

No. 14843.

Court of Civil Appeals of Texas, San Antonio.

Feb. 11, 1970.

Rehearing Denied March 11, 1970.

Gene L. Jameson, Stubbeman, McRae, Sealy & Laughlin, Midland, for appellant.

Legg, Saxe & Baskin, Midland, for appellee.

BARROW, Chief Justice.

Appellant, hereinafter referred to as Pacific Molasses, brought this suit to recover the sum of $6,309.82, plus attorneys' fee of $2,000.00, from appellee Graves Molasses Company, hereinafter referred to as Graves Molasses, for molasses sold it, and from appellee Thomas Graves on his written guaranty to pay debts of Graves Molasses. Appellees pleaded a general denial and specifically that the sum of $5,349.60 had been mistakenly paid by Graves Molasses to Pacific Molasses on invoices representing molasses delivered to Robinson Food Products Company, hereinafter referred to as Robinson, and that such sum should be credited Graves

Molasses' account. Judgment was rendered after a jury trial that Pacific Molasses recover from appellees the uncontested sum of $960.22 with interest from January 1, 1967, but all other relief was denied.

The transactions surrounding the controversy in question occurred in 1965 and early 1966. Thomas Graves, a resident of Midland, operated several businesses through closely held corporations. He operated the Graves Oil & Gas Company and Thomas Graves Transport Company out of Midland. These companies transported butane in bulk and sold it at retail. Out of Abilene, he operated the Graves Oil Company which bought and sold oil. In 1949 he started the Graves Molasses Company and incorporated this business in 1954. It operated out of Fort Worth and bought molasses in Houston for delivery and resale to feedmills and feedlots. Pacific Molasses sold molasses to Graves Molasses for several years prior to 1965. In June, 1965, Graves became associated with David Paige and Truitt Davis and as a result of this association three corporations were formed: Robinson Food Products Company, Lancer Petroleum Company, and Pagrada, Inc. Graves owned forty per cent of the stock in each of these three corporations and Paige and Davis owned the remainder. Robinson and Lancer operated out of Abilene and hauled molasses and petroleum products, respectively, with equipment owned by and leased from Pagrada.

In the latter part of 1965, Graves Molasses and the three Abilene based corporations were in serious financial difficulties. Graves Molasses owed Pacific Molasses approximately $40,000 on its account, and the three Abilene corporations were losing money. An agreement was made between Graves, Paige and Davis whereby Graves was given all the stock in Robinson and Pagrada, Inc., and the latter two persons were given the Lancer stock. The testimony is conflicting between Graves and his two corporate associates as to how the financial affairs of Robinson were to be

wound up. It is undisputed, however, that all stock in Robinson was transferred to Graves as of December 31, 1965. He testified that this was for the purpose of dissolving the corporation, and that Davis and Paige were to pay all debts incurred by Robinson prior to December 31, 1965. These two parties testified that Graves took Robinson subject to all its assets and liabilities. In any event, by the latter part of January, 1966, Robinson was virtually insolvent after the transfer by Davis of large sums of money from Robinson to Lancer for undisclosed reasons.

The bookkeeping operation of Graves Molasses was transferred to Midland before January 1, 1966, although the trucks were still dispatched out of Fort Worth. Thereafter, molasses purchased from Pacific Molasses was paid for in the following manner. Pacific Molasses drew a draft on Graves Molasses, payable at The First National Bank of Midland, and attached to it the invoices covered by the draft. Pacific Molasses deposited the draft and attached invoices to its California bank account, and same were then sent through banking channels to Midland. On arrival at the Midland Bank, Adrian Scoggins, who was general manager and bookkeeper for the various corporations operated by Graves, was notified. Scoggins would go to the bank and give a check on Graves Molasses to cover the draft and invoices which were turned over to him. On January 10, 1966, Scoggins followed this procedure in picking up drafts dated January 5th and 7th in the amount of $2,075.47 and $1,240.22, respectively, supported by invoices showing molasses delivered by Pacific Molasses to Robinson in December, 1965. On January 14, 1966, he paid a draft dated January 12th in the amount of $2,033.91, which was supported by invoices showing molasses delivered by Pacific Molasses to Robinson in December, 1965. On the same occasion he paid a draft in the amount of $2,466.15 which was supported by invoices showing molasses delivered to Robinson in January, 1966.

Although Graves planned to dissolve Robinson, since it carried on the same operations as Graves Molasses, it was necessary for Graves Molasses to continue purchases in the name of Robinson until the license permits on the trucks could be changed. Therefore, Graves conceded that Graves Molasses owed for the molasses purchased in the name of Robinson during the first two weeks of January, which was paid for by Scoggins in the same manner as the drafts in question. He contended, however, that Scoggins made a mistake in paying the drafts on the invoices representing purchases by Robinson in December, 1965, since Paige and Davis were to pay for same under the dissolution agreement. This is contradicted by the testimony of the credit manager for Pacific Molasses, which is not denied by Scoggins, that Pacific Molasses sent the December, 1965, invoices owed by Robinson in the above manner, pursuant to a telephone conversation with Scoggins, after they had been rejected by the Abilene Bank which had previously handled the Robinson account.

The jury returned a verdict substantially as follows: 1. The three drafts in question were paid by Graves Molasses to Pacific Molasses by mistake. 2. Scoggins was authorized by appellees to make arangements with Pacific Molasses for payment on invoices incurred during 1965 in the name of Robinson. 3. Scoggins told Pacific Molasses to send sight drafts covering invoices for molasses delivered to Robinson during 1965 through the Graves Molasses' bank account at Midland for payment. 4. Pacific Molasses did send such sight drafts for payment through Graves Molasses' bank account. 5. Such action by Pacific Molasses was done in reliance upon statements made by Scoggins as office manager of appellees. 6. A reasonable attorneys' fee for the services rendered on behalf of Pacific Molasses in this case would be $2,000.00.

Pacific Molasses moved for judgment non obstante veredicto wherein it urged the trial court to disregard the finding to Spe-

cial Issue No. 1. Appellees moved for judgment on the verdict, which was granted by the trial court although Issues Nos. 2–6 obviously form no part of such judgment.

Appellant urges ten assignments of error. Under its first nine points, it complains of the entry of judgment based on the jury finding of mistake. It asserts there is no evidence or insufficient evidence to support such a finding; that the evidence raises only an issue of unilateral mistake which is no defense to appellant's claim on its account; furthermore, it urges that the mistake asserted by appellees was a mistake of law and not of fact; that irreparable injury will result to appellant if appellees are permitted to rescind the payment credited to Robinson, in that the latter corporation is now insolvent; that the payment did not result in unjust enrichment to Pacific Molasses; and, finally, it is urged that the alleged mistake was caused by the voluntary acts of Graves Molasses with conscious disregard of the true situation. By its tenth point appellant complains of the trial court's refusal to render judgment for the reasonable attorneys' fee as found by the jury.

■ No attack has been made by appellees on the jury findings to the effect that Scoggins was authorized by appellees to have Pacific Molasses draw sight drafts on Graves Molasses through its Midland Bank for the invoices representing the December, 1965, shipments of molasses to Robinson. Despite these findings the jury found that the three drafts in question were paid by mistake as therein defined.[1] The record is not clear as to what the mistake was or by whom it was made. Appellees' position, as shown by the testimony of Graves, is that Scoggins was under the mistaken impression that the drafts in question were in payment of invoices for molasses sold Robinson in January, 1966. Such a contention would be in line with Graves' testimony that the invoices owed by Robinson prior to January 1, 1966, were to be paid by Paige and/or Davis. This is also supported by the subsequent communications between Graves and the Pacific Molasses credit manager which indicated that Graves was trying to have Paige and Davis reimburse him for these three drafts. Irrespective of the testimony of Graves, the jury rejected such an asserted mistake on the part of Scoggins by their findings to Special Issues Nos. 2 and 3.

■ Clearly, any mistaken belief by Graves, or misunderstanding with Davis and Paige as to whether the latter two persons would reimburse Graves Molasses for payment of the invoices representing molasses shipped Robinson in 1965, would not entitle Graves or Graves Molasses to equitable relief from Pacific Molasses. In Pennell v. United Ins. Co., 150 Tex. 541, 243 S.W.2d 572 (1951), it was said: "The settled general principle applicable here is that 'as between individuals, money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" See also Greene v. Bates, 424 S.W.2d 5 (Tex. Civ.App.—Houston (1st) 1968, no writ); Employers Cas. Co. v. Universal Underwriters Ins. Co., 404 S.W.2d 954 (Tex.Civ. App.—Amarillo 1966, no writ).

Appellees assert on this appeal that this record demonstrates a classic three-party situation which is best illustrated by the "stop payment" case. In this situation a stop payment order has been issued to the

---

1. "With reference to the word 'mistake' as used in this Charge, you are advised that a mistake exists when a person or corporation under some erroneous conviction of fact does or omits to do some act which, but for the erroneous conviction, he or it would not have done or omitted.

"To constitute 'mistake', the ignorance must be unconscious, and not a mental state of conscious want of knowledge as to something that may or may not exist. Mere conscious ignorance of the existence or non-existence of a fact is not a mistake."

bank, but it mistakenly pays the item to the payee and then seeks to recover from the party who cashed the check. In such a situation it is held that the bank is entitled to recover the money paid through its own negligence or oversight. The basis for such holding is stated in Central National Bank of Houston v. Martin, 396 S.W.2d 218 (Tex.Civ.App.—Houston 1965, writ dism'd), as follows: "The law is well settled that money paid under a mistake of fact caused by carelessness, negligence or forgetfulness may be recovered. See 44 Tex.Jur.2d § 77, p. 750, and also p. 752, where it is said: 'The reason for the rule is that the payee ought not to retain what in conscience does not belong to him as against the person to whom in conscience it does belong.'" See also First-Wichita National Bank v. Steed, 374 S.W.2d 932 (Tex.Civ.App.—Fort Worth 1964, no writ); Capital National Bank in Austin v. Wootton, 369 S.W.2d 475 (Tex.Civ.App.—Austin 1963, writ dism'd).

Although Graves Molasses and Robinson were separate corporate entities,[2] it cannot be said that this record demonstrates such a three-party situation. Scoggins was the bookkeeper for both corporations and, under the unattacked jury findings, he was expressly authorized to pay the drafts in question in exactly the manner same were paid. Furthermore, in view of Graves' ownership of substantially all the shares in both corporations, there was undoubtedly consideration for him to pay these drafts. This is best demonstrated by the fact that Graves testified that drafts covering molasses sold to Robinson in January, 1966, were properly paid by Scoggins in the same manner. Also several invoices issued in the fall of 1965, covering molasses sold Robinson, were actually paid by Graves Molasses. Furthermore, the payment did not result in any unjust enrichment to Pacific Molasses. Irrespective of the factual distinctions of this case with the stop payment situation, appellees have not challenged the jury findings which refute any contention that the payments by Scoggins were made by mistake.

In James T. Taylor & Son, Inc. v. Arlington Independent School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960), the Supreme Court considered the question presented where a contractor sought to rescind a low bid submitted as the result of a unilateral mistake by said contractor. It was there said: "Most of the cases and legal writers affirm the proposition that equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present. These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of his bargain. There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties."

The record before us does not support a finding of the type of mistake which would entitle appellees to equitable relief. We, therefore, conclude that the trial court erred in entering judgment for appellees on the jury verdict. The account of Graves Molasses in the total sum of $6,309.82 is due and unpaid. The payment of same will not result in a double payment or unjust enrichment of Pacific Molasses. Furthermore, since this account was improperly denied after demand was made pursuant to the terms of Art. 2226, Vernon's Ann.Civ.St., appellant is entitled to recover its reasonable attorneys' fee as found by the jury.

The judgment of the trial court is reversed and here rendered that appellant, Pacific Molasses Company, recover from

2. See Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex.Sup.1962).

appellees, Thomas Graves and Graves Molasses Company, jointly and severally the sum of $6,309.82, with interest on said sum at the rate of 6 % per annum from January 1, 1967, and its attorneys' fee in the sum of $2,000.00, plus interest at the rate of 6% from May 15, 1969.