# MARCH, 1910.

DORRANCE & COMPANY v. INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY, ET AL.

No. 1964.   Decided March 2, 1910.

1.—Carriers—Delay—Statutory Penalty—Pleading.

In an action to recover the statutory penalty of 5 percent per month on the value of goods unreasonably delayed by a carrier (Rev. Stats., arts. 4494, 4496) the carrier's obligation to take and transport (art. 4496) refers to property tendered under the conditions named in art. 4494, that the authorized freight be paid. But it is not essential that it be prepaid in advance, and a petition for the recovery of such penalties which shows that a draft for the freight, drawn by the shipper on the consignee was attached to the bill of lading, delivered to the carrier and settled by the consignee on presentment of the bill of lading sufficiently shows payment thereof within the terms of the statute. (P. 205).

2.—Same.

Allegation of a mere agreement to pay the freight is not equivalent to "due payment" thereof required by the statute (Rev. Stats. art. 4494); but it is otherwise as to a draft on the consignee therefor by the shipper, given to the carrier and paid on its presentation with the bill of lading. (P. 206).

**3.—Same—Value of Property.**

In order to recover the statutory penalty of 5 percent per month on the value of the property for delay of goods by a carrier, (Rev. Stats., arts. 4494, 4496) it is necessary that the value be alleged, and a statement thereof only in an exhibit attached to the petition is insufficient.  (Pp. 205, 206).

**4.—Same.**

Where plaintiff alleges the shipment of goods and their value, that they were unreasonably delayed, and the time so delayed, he shows a right to recover interest at the legal rate on the value of such shipment (Rev. Stats., arts. 4494, 4496) and the fact that he claims more than the legal rate in his petition will not debar him from such recovery.  (P. 206).

Questions certified from the Court of Civil Appeals for the First District in an appeal from Harris County.

*Harris & Harris,* for appellants.

*E. B. Perkins, King & Morris,* and *Wilson & Dabney,* for appellees. —In proceedings to enforce a statutory penalty, the facts constituting the offense must be specifically and certainly averred.  The plaintiff must by his allegations bring himself strictly within the provisions of the acts prescribing the punishment against the defendants.  The rule is elementary that penal statutes must be strictly construed, and the penalty will not be allowed, except insofar as the purpose to allow same is clearly manifested by the language employed in the statute, and the plaintiffs can not fix the penalty on the defendants unless they allege a case which comes strictly within the terms of the statute, by specific and certain averments, and by an allegation of particular facts authorizing the imposition on the defendants of the penalty.  Rev. Stats., arts. 4494 (4226), 4496 (4427); Act of Feb. 9, 1853, 9, 10, p. 56; Pasch. Dig., 4893, 4894; Act of April 2, 1887, p. 116; Rev. Stats., 321 (279); St. Louis S. W. Ry. Co. v. Kay, 85 Texas, 559, 560; Houston, E. & W. T. Ry. Co. v. Campbell, 91 Texas, 557; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 602, 603, 604; Gulf, C. & S. F. v. Dwyer, 84 Texas, 198, 199, 200; Missouri, K. & T. Ry. Co. v. Rines, 37 Texas Civ. App., 618; Houston & T. C. Ry. Co. v. Smith, 63 Texas, 325; Arberry v. Beavers, 6 Texas, 473; Western U. Tel. Co. v. Henry, 87 Texas, 168, 169; State v. Williams, 8 Texas, 265; Hayes v. Stewart, 8 Texas, 360; Murray v. Gulf, C. & S. F. Ry. Co., 63 Texas, 413; Texas & P. Ry v. Wood, 23 S. W., 744, 745.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals for the First Supreme Judicial District.  The statement and questions are as follows:

"This case is pending before us on motion for rehearing.

"In the District Court a general demurrer urged by the defendants to the original petition of the plaintiffs, Dorrance & Company, was sustained and the plaintiffs declining to amend, their suit was dismissed, and from the judgment of dismissal they prosecute this appeal,

"The petition, omitting the caption, address and signature of counsel, is as follows:

" 'John M. Dorrance, Wm. L. Van Liew, Joseph H. Chew, Edwin L. Neville and Edward H. Hellen, copartners in business, under the firm name and style of Dorrance & Company, complaining of the International & Great Northern Railroad Company, Incorporated, and the St. Louis, Southwestern Railway Company of Texas, Incorporated, respectfully represent:

" 'I. That plaintiffs, and each of them, reside in Harris County, Texas, and are copartners in business as cotton buyers, sellers and brokers, under the firm name and style of Dorrance & Company, with their principal office in the city of Houston, State and county aforesaid.

" 'II. That defendants, and each of them, are railroad corporations, duly incorporated under the laws of the State of Texas and duly authorized to do business in the State of Texas, and are common carriers of goods, wares and merchandise, for hire, within the State of Texas, and are connecting lines within the State of Texas, receiving freight, goods, wares and merchandise for through shipment over both of said railroads, between points within this State, on contracts for through carriage, recognized, acquiesced in and acted upon by said common carriers.

" 'That the International & Great Northern Railroad has a representative in Harris County, Texas, to wit: Horace Booth, and said St. Louis Southwestern Railway Company of Texas, has a representative in Harris County, Texas, to wit, George M. Winstead.

" 'III. That heretofore, to wit, on the first day of October, A. D. 1906, and ever since, the aforesaid defendants, and each of them, were common carriers, and connecting lines within the State of Texas, as aforesaid; and on said date, and ever since, plaintiffs were cotton buyers and sellers.

" 'That on said first day of October, A. D. 1906, and on various and sundry dates thereafter, down to, to wit, about the first day of March, A. D. 1907, there were delivered to defendant, St. Louis Southwestern Railway Company of Texas, at Gatesville, Leon Junction, Mounds and Oglesby, in the State of Texas, by W. L. Ayres and W. B. Cavitt and E. H. Hellen, consignors, a great number of bales of cotton, to wit, about the sum of six thousand (6,000) bales, which were received by the defendant, the St. Louis Southwestern Railway Company of Texas, to be delivered to plaintiffs under the firm name and style of Dorrance & Company, at Houston, Harris County, Texas, for which defendant, the St. Louis Southwestern Railway Company, executed and delivered bills of lading over its own lines, and over the line of the defendant, the International & Great Northern Railroad Company, to point of destination, Houston, Texas; the precise number of bales so shipped, the marks on each bale, the point of shipment, and the number and date of the bill of lading, being set forth in detail in exhibits A, B and C, hereto attached and made a part hereof.

" 'That defendants, and each of them, as connecting lines and common carriers within the State of Texas, in consideration of a reasonable compensation, to wit, the proper freight charges then paid or

agreed to be paid to defendants by plaintiffs, agreed to promptly forward from point of shipment to point of destination, and to promptly deliver within a reasonable time to plaintiffs, at Houston, Texas, the aforesaid bales of cotton.

" 'IV. That defendants, and each of them, in violation of their agreement to promptly transport and deliver said cotton to plaintiffs within a reasonable time, and, to wit, within a period of about ten days, utterly neglected to transport the aforesaid cotton within a reasonable time; but, on the contrary, said defendants, and each of them, delayed said cotton in transportation over the reasonable time of, to wit, about ten days, by delay on different shipments of from five to ninety days, over and above the aforesaid reasonable time of, to wit, about ten days for transportation; the number of bales; and the date when received at point of destination, to wit, Houston, Texas, and the number of days excess in transportation, after allowing ten days for transit, upon each lot of cotton shipped, being shown in detail in exhibits A, B and C, hereto attached and made a part hereof.

" 'V. That the defendant, the St. Louis Southwestern Railway Company of Texas, issued through bills of lading from point of shipment to Houston, Texas, for each of said lots of cotton, upon its own line, and over the line of its connecting common carrier, to wit, defendant, the International & Great Northern Railroad Company; the number and the date of each bill of lading, together with the number of bales, the marks and the point of shipment, being all shown in detail in exhibits A, B and C, hereto attached, and made a part hereof.

" 'That the said bills of lading when issued, as aforesaid, to the consignors, were attached to drafts by said consignors and forwarded to plaintiffs herein for payment; and that, in accordance with the usual custom of the cotton trade, plaintiffs, upon receipt of said drafts, at once paid the amounts thereof, being the invoice value, whereupon the aforesaid bills of lading were delivered to plaintiff, to be finally surrendered by plaintiffs to defendants, upon actual delivery of the cotton called for.

" 'That upon each draft as paid, plaintiffs were compelled to pay the usual banking rate of seven percent (7%) interest, the aggregate amount of interest so paid on the aforesaid shipments being the sum of, to wit, $1,054.49 damage caused these plaintiffs by the failure of defendants, and each of them, to promptly transport and deliver within a reasonable time the aforesaid cotton, the amount of interest so paid being shown in detail upon exhibits A, B and C, hereto attached and made a part hereof.

" 'And plaintiffs say that they were further damaged in addition to the loss of the use of their money, and the consequent necessity of paying interest on their overdrafts in this, to wit:

" 'That pending the delay in the prompt delivery of said cotton the price of spot cotton was gradually advancing, and these plaintiffs were forced to go into the open market at Houston, Texas, and buy other cotton on the spot in Houston, Texas, and at other points in Texas, at a premium, on account of the advancing price of cotton, in order to fill contracts made by plaintiffs for the sale of cotton and

for freight engagements by steamer out of Galveston, Texas; and the sum so paid by way of premium on account of advanced price of cotton amounting to the sum of, to wit, about one thousand dollars ($1,000).

" 'That when the aforesaid cotton was finally delivered by defendant company to plaintiffs, the price of cotton was still higher than it was at the time the aforesaid cotton should have been delivered to plaintiffs, if the same had been properly transported within a reasonable time; but these plaintiffs say that they gained nothing by such advance in price, because, as is the custom of trade with cotton buyers, these plaintiffs had protected themselves at the time they bought the aforesaid cotton, shipped over defendants' connecting lines, by hedging, and selling futures against said cotton, so that what plaintiffs would lose by the decline of the price of cotton they would gain in their futures, and what plaintiffs would gain by advance in the price of cotton they would lose in their futures.

" 'VI. And these plaintiffs further say that by reason of the failure of defendants, and each of them, as common carriers and connecting lines, to promptly transport and deliver the aforesaid cotton at the regularly appointed time, and to wit, within a reasonable time after the receipt of the same, that defendants, and each of them, are bound to pay to plaintiffs all the aforesaid damages, which plaintiffs have sustained, with costs of suit, and that in addition to the aforesaid damages defendants, and each of them, are bound to pay plaintiffs herein special damages at the rate of five percent (5%) per month upon the value of the aforesaid cotton at the time of shipment, by reason of the negligent detention of said cotton beyond the time reasonably necessary for its transportation. The aforesaid special damages aggregating the amount of, to wit, ten thousand dollars ($10,000); and the amount in detail of such special damages on bills of lading and shipments of cotton being shown in detail in exhibits D, E and F, hereto attached and made a part hereof.

" 'VII. Wherefore, plaintiffs pray that citation issue to defendants, and each of them, and that upon final hearing plaintiffs have judgment against defendants, and each of them, for their damages by way of loss of interest, as heretofore set forth, in the sum of, to wit, $1,064.49; for their further and additional damages by reason of having to buy other cotton at advanced prices, as aforesaid, in the sum of, to wit, one thousand dollars ($1,000); and for further and additional special damages in accordance with the statute in such case made and provided, in the sum of, to wit, ten thousand dollars ($10,000); for all costs of suits; and for such other and further relief, both general and special, at law and in equity as to right and justice may appertain.'

"We deem it wise to certify for your determination the following questions:

"1. Does the petition sufficiently allege a cause of action for the recovery of statutory damages under articles 4494 and 4496 Revised Statutes?

"2. Does the petition sufficiently allege a cause of action for re-

covery of interest at the legal rate on the value of each delayed shipment after the time delivery should have been made?

"3.  Were the allegations of the petition, that the freight charges upon each shipment were 'paid or agreed to be paid' at the time the shipment was tendered, sufficient under the statute which requires the carrier to take and promptly transport shipments 'upon due payment of the tolls?'"

The statutes we are called upon to construe in answering these questions are articles 4494 and 4496.  They read as follows:

"Art. 4494.  Every such corporation shall start and run their cars for the transportation of passengers and property at regular times, to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer or be offered for transportation at the place of starting, and the junction of other railroads, and at sidings and stopping places established for receiving and discharging way passengers and freights, and shall take, transport and discharge such passengers and property at, from and to such places on the due payment of the tolls, freight or fare legally authorized therefor."

"Art. 4496.  In case of the refusal by such corporation or their agents so to take and transport any passenger or property, or to deliver the same, or either of them, at the regular appointed time, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit, and in case of the transportation of property shall in addition pay to such party special damages at the rate of five percent per month upon the value of the same at the time of shipment, for the negligent detention thereof beyond the time reasonably necessary for its transportation; provided, that in all suits against such corporation under this law the burden of proof shall be on such corporations to show that the delay was not negligent."

The first question which we will discuss grows out of the construction of the words, "on the due payment of the tolls, freight or fare legally authorized therefor."  It is contended on behalf of the appellee that the words in article 4496, "in case of the refusal by such corporation or their agents so to take," etc., refers to the preceding article, and means that in case of a refusal on part of a railroad company to take under the conditions prescribed in that article.  In this we fully concur, but when he argues that "on payment of tolls" means, a prepayment of tolls or freight, we do not concur.  Freight paid in advance is freight paid.  So is freight paid after one, two or ten days delay.  How can it be said, that freight is not paid, when upon the making out of the bill of lading a bill of exchange is given the company for the freight and such forwarded with the bill of lading attached and settled upon presentation?  Such are the facts as alleged in the petition, and hence we think the allegations as to the freight having been paid are good.

But this part of the petition is further attacked upon the ground, that the value of the cotton shipped is not alleged.  This is of course

necessary for the recovery of the penalty because the amount of recovery is five percent upon the value of the cotton shipped. It is true as we infer from the petition, that it had annexed to it certain exhibits of the number and value of the bales of cotton shipped, but it is nowhere alleged that this is the true value of the cotton shipped and in one place the value therein set down is called "the invoice value;" and we are of the opinion that this allegation was not sufficient.

As to the second question: when a shipper has shipped goods by a common carrier, and alleges the fact and the value of the goods and that they were not delivered in a reasonable time, he is entitled to interest upon the value for the time of the unreasonable delay. So that when he alleges the shipment, the value of the goods and the time of the unreasonable delay, he is entitled to recover the legal rate of interest. The fact that he claims a rate of interest beyond the legal rate will not debar him from recovering the legal rate. We answer the second question in the affirmative.

In answer to the third question, we say, that we are of opinion that the allegation in the petition "that the freight charges upon each shipment were 'paid or agreed to be paid' at the time the shipment was tendered," does not show a compliance with the requirement of the statute that the freight should be paid. But recurring to what we have said in answer to the first question, we repeat, that in our opinion the allegation of payment of the freight is supported by the averment that a draft was given for the freight, which upon presentment, was paid.