T. P. GONZALEZ, Appellant,

v.

TEXAS FEED & GRAIN CO., Inc., Appellee.

No. 16036.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 23, 1959.

Rehearing Denied Nov. 20, 1959.

Storey, Armstrong & Steger, and James T. Berry, Dallas, for appellant.

Richard Owens, Fort Worth, for appellee.

MASSEY, Chief Justice.

This is a suit for breach of contract to take grain contracted to be delivered by one party and to be accepted by the other. In addition to the ordinary damages occasioned by the breach, the seller sought to recoup certain demurrage charges occasioned at a time when the seller was causing a delay in transit, because of the purchaser's request and so that the purchaser could be afforded time to try to get certain permits requisite to using American railroad cars in the transport of grain into Mexico.

The plaintiff (seller) was the Texas Feed & Grain Co., Inc., and the defendant (purchaser) was T. P. Gonzalez, trading in the name of Gonzalez & Blanco.

Judgment for plaintiff was based upon answers returned by the jury to special issues submitted, and from said judgment the defendant appealed.

Judgment affirmed.

The parties will be styled as they were in the trial court. Defendant insists that there is evidence in the record that plaintiff elected to sell the grain for defendant's account rather than to "treat it as its own",

and that therefore plaintiff should be confined to a measure of damages which would be the difference between the contract price and the amount for which plaintiff resold the grain after defendant's breach. On the appeal no question is presented relative to breach and breach will be treated as established. Alternatively, it is contended by defendant that even if the plaintiff's measure of damages should not be so calculated, he should have been permitted to elicit testimony showing the amount for which the plaintiff resold the grain to other purchasers after defendant's breach, as having a bearing upon the measure of damages for which plaintiff contended.

The measure of damages defendant claims to be applicable under the circumstances of the case was not that for which the plaintiff sued, nor which was the foundation of the judgment. The defendant was not permitted to prove the amounts for which the grain was resold after his breach.

The theory upon which the plaintiff plead and proved its case was the ordinary measure of damages, or " * * * the ordinary measure of which is the difference between the contract price and the value of the goods at the time of the repudiation. * * * if he (the seller) does not care to pursue one of the other remedies * *." 37–A Tex.Jur., p. 613, "Sales", ch. XVI, "Remedies of Seller", sub. G., "Recovery of Damages", sec. 300, "Availability of Remedy Generally".

The defendant did not plead affirmatively in any respect, contenting himself with a general denial.

In the latter part of 1957 and first part of 1958 there was a shortage of grain in Mexico. The defendant desired to acquire it in the United States, as delivered at Laredo, Texas, from which he would cause it to be shipped on into the interior of Mexico where he would market it at an expected profit. He planned to use the same railroad cars in which the grain arrived at Laredo in the accomplishment of his purpose, and to leave the grain on the cars and send all on to the points where he expected to market it. It is apparent that others were doing substantially the same thing and a great many American railroad cars were in Mexico. The railroads were encountering some trouble in getting their railroad cars returned to the United States, and in consequence anyone who wanted to move other cars into Mexico were running into difficulties. In order to so move other cars permits were required. The defendant in the instant case could not get the necessary permits to accomplish the purpose he had in mind when he contracted with the plaintiff to take the grain. While the grain was in transit he was doing all he could to get permits which would enable him to avoid a condition where the grain would sit on the tracks at Laredo, upon arrival at that point, and perhaps spoil. He requested that the plaintiff delay grain in transit, even incurring demurrage charges, in preventing delivery at Laredo before he could secure the necessary permits to accomplish his purpose. Plaintiff complied with the request. Apparently the defendant never did obtain these permits. In consequence, he did not desire to accept the grain.

There were three contracts in all, but substantially the same terms were in each, other than the delivery dates.

A breach of one of the contracts occurred on February 15, 1958. Obviously, plaintiff did not desire to treat it as a breach. Three days thereafter, the plaintiff stated in a wire to the defendant, " * * * therefore contracts (are) still in force and corn (is) being held for your account we must now insist that you arrange for handling of corn on track else same will have to be sold for your account."

A few days later, on March 5, 1958, plaintiff wrote the defendant that twenty-four cars of corn had been ordered to a grain elevator in Fort Worth for storage and to get same off the tracks so as to stop heavy demurrage. In the letter the de-

murrage charges and elevation charges were noted as considered properly charged to defendant's account. Previous demurrage charges were stated and referred to along with identification thereof and the statement was made that plaintiff was drawing a draft on the defendant to bring the latter's account up-to-date. The amount thereof was $2,662.37. It seems clear to us that up to this time the plaintiff was waiving any right to treat the contract as having been breached by the defendant and was insisting on performance as contracted. By letter dated March 10, 1958, the defendant wrote plaintiff and stated "We cannot accept your charges of $2,662.37, as they are not for our account." Further, in the same communication, the defendant made it plain that he considered the contracts with the plaintiff to have expired without tender of the "deliveries at Laredo". From and after such time the plaintiff did treat the contracts as having been breached. There is no question but what the contracts were breached.

■ It is to be remembered that the defendant had not plead anything regarding mitigation of damages. Neither did he request any issue bearing upon it. In view of the evidence, it seems to us that the defendant was estopped from making the contention he is making here, for he did nothing but disavow any liability, choosing to do nothing at all, though he had equal opportunity with the plaintiff to have minimized a loss through effecting a resale or authorizing the plaintiff to resell for his account if he felt that such procedure would minimize any loss which might ultimately fall upon him. Walker v. Salt Flat Water Co., 1936, 128 Tex. 140, 96 S.W.2d 231, 97 S.W.2d 460. Furthermore, he did not plead anything which would entitle him to assert a right to any minimization of the ordinary measure of damages, or to introduce evidence bearing thereupon, which we believe was his duty. 37–A Tex.Jur., p. 736, "Sales", sec. 355, "Mitigation of Damages"; 37–B Tex.Jur.,

p. 56, "Sales", sec. 410, "Mitigation of Damages"; 13 Tex.Jur., p. 102 et seq., "Damages", secs. 18 to 26, inclusive. Had the defendant adequately plead that he was entitled to have the measure of damages based upon the difference between the contract price and the price obtained upon a resale, raising a fact issue, the plaintiff would have been on notice and no doubt prepared to plead and prove the costs and expenses incident to accomplishing the resale, such being proper items to have been taken into account in calculating the damages collectible by the plaintiff in the event the jury should find for the defendant upon such a defense. 13 Tex. Jur., pp. 107 and 114, "Damages", sec. 21, "Effect of Cost of Minimizing Damages", and sec. 26, "Amount of Effort or Money Required to be Expended".

■■ We believe that the evidence substantiating the damages as prayed for in plaintiff's petition, and awarded by the judgment, was ample and sufficient and in no sense contrary to the great weight and preponderance of the evidence. The same thing is true as to the amount in the total awarded as damages for demurrage, said amount being well within the sum demanded by the plaintiff in its letter of March 5, 1958, immediately prior to the time the defendant disavowed any liability in the premises. Furthermore, the exclusion of evidence bearing upon the matter of what the plaintiff obtained for the grain upon reselling the same after the breach was entirely proper. The exclusion thereof supplied no valid basis for complaint by the defendant.

■ By a point of error the defendant contends: "The trial court erred in rendering judgment for appellee upon the contract of January 3, 1958, based upon the difference between the contract price and the market value of No. 4 yellow corn in Laredo, Texas, on February 15 and 28, 1958, as found by the jury, because appellee alleged a contract to supply No. 2 yellow corn."

. It is true that plaintiff's pleadings did allege as stated in the point of error. All the evidence was as to No. 4 yellow corn, and was not objected to. The contracts between the parties contemplated No. 4 yellow corn. There was no objection to the issues submitting the question as upon No. 4 yellow corn. In view of the provisions of Texas Rules of Civil Procedure, rules 67, 90 and 274, we believe that the defect in plaintiff's pleading is waived. See McDonald Texas Civil Practice, "Pleading: General", sec. 5.18, "Waiver of Defects in Pleading", sec. 5.19, "Variance",

By a final point of error the defendant contends that "The trial court erred in refusing to grant appellant's three motions for continuance." We will disregard any question about whether the point should have been otherwise presented. We do not believe the situation in any one of the three instances, or in the three collectively, presents error. Plaintiff's suit was filed April 28, 1958, and subsequently the case was set for trial on October 10, 1958. At the request of counsel for the defendant, the setting was vacated. This was obviously treated as the first motion for continuance. The case was then set for trial on November 3, 1958, all interested parties being notified. On November 3, 1958, the second motion for continuance was filed, the affidavit portion of the same stating that the defendant had to leave this country some date after June 30, 1958, and did not return until early October; that on October 22, 1958, the defendant had to be out of the country again until October 28; that he was out of the country in Mexico during most of the time up to October 22; in consequence of which defendant's attorneys could not properly prepare for trial.

It being apparent that the court would overrule the motion, and apparently it was overruled, it seems that all parties agreed that the jury would be empaneled on November 3, 1958, but that the case would be recessed until the following morning so that the defendant, who was flying in from California, could arrive in time for the introduction of testimony.

Before the jury was selected, counsel for defendant dictated into the record an additional motion for continuance. In it he moved the court to continue the cause "to any day subsequent to November 3, 1958." Further "That if said case is continued until November 4th or to the 5th or any other subsequent date this week or later that the ends of Justice would not be defeated, and in fact same would be in the interest of Justice to thus postpone the commencement of this suit until at least the defendant could be personally present."

It appears that defendant's contentions have no merit. In the first place, the postponement operated to accomplish the very thing asked for by the motion for continuance, nothing having transpired prior to November 4 other than the selection of the jury; secondly, it would seem that since the defendant did personally appear on November 4, 1958, and participated and testified, no injury was done to him as result of the action of the court in overruling the motion. The real basis of the defendant's contention of prejudice is that counsel did not have time to properly prepare a defense for a client who was so often out of the country. Diligence should be considered as the obligation of the party, not merely the attorneys employed for the purposes of the trial. Considered in the utmost liberality toward the defendant, we cannot perceive that the affidavit demonstrates that degree of diligence entitling the defendant to a continuance as a matter of law, nor that the trial judge abused his discretion in overruling the same. 9 Tex. Jur., p. 739, "Continuance", sec. 66, "Showing of Diligence".

Judgment is affirmed.