**R. G. McCLUNG COTTON COMPANY, Inc., Appellant,**

v.

**COTTON CONCENTRATION COMPANY et al., Appellees.**

**No. 17748.**

Court of Civil Appeals of Texas, Dallas.

Feb. 24, 1972.

Rehearing Denied April 6, 1972.

Second Motion for Rehearing Denied May 4, 1972.

David M. Kendall, Jr., Woodruff, Kendall & Smith, W. Newton, Barnes, Dallas, for appellant.

Frank C. Brooks, O. D. Montgomery, Brooks, Montgomery & Matthews, Dallas, for appellees.

GUITTARD, Justice.

This suit was brought by plaintiff R. G. McClung Cotton Company, Inc. against defendant Cotton Concentration Company to recover as damages the amount of decline in market value of 8,485 bales of cotton during the period of delay by defendant in weighing and sampling the cotton, which was stored in defendant's warehouse, together with interest and storage charges for the period of the delay. The jury found that defendant failed to weigh and sample the cotton within a reasonable time after plaintiff requested it to do so, that the difference in market value for the period of the delay was $106,062, and that because of such delay plaintiff was required to pay out $7,356 as storage charges and $6,365 as interest charges. Defendant moved for judgment *non obstante veredicto* and the trial court sustained this motion in part, denying recovery for difference in market value but rendering judgment on the verdict for the storage and interest charges. Both parties have appealed.

### 1. *Plaintiff's Appeal*

#### a. *Proof of Damages*

Plaintiff's eighth point asserts that the trial court erred in disregarding the finding of difference in market value because there was sufficient evidence of probative force to support this finding. We sustain this point.

■ The principal question is whether the owner of goods intended for sale, which are unreasonably delayed in processing, may recover damages measured by decline in market value of the goods during the period of delay without proof of the amount actually received from sale of the goods. We hold that proof of the actual sale price is not required.

■ Since we have found no cases directly on this point, we have reviewed the authorities concerning measure of damages for breach of contract and particularly those in analogous cases of delay by carriers in transportation of goods. The general principle of damages is compensation to plaintiff for his actual loss resulting from defendant's wrong. Chicago, M. & St. P. Ry. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801 (1920); Stewart v. Basey, 150 Tex. 666, 245 S.W. 2d 484 (1952). In applying this principle to claims for delay by carriers in shipment of goods intended for sale, the courts have established the measure of damages to be the difference between the market value at the time and place of delivery required by the contract and the market value at the place and time of actual delivery. Chicago, M. & St. P. Ry. v. McCaull-Dinsmore Co., supra; San Antonio & A. P. Ry. v. Pratt, 89 Tex. 310, 34 S.W. 445 (1896); Texas P. Ry. v. Nicholson, 61 Tex. 491 (1884); Texas & N. O. R. R. v. H. Rouw Co., 271 S.W.2d 666 (Tex.Civ.App., San Antonio 1954, writ dism'd); Chicago, R. I. & Pac. Ry. v. C. C. Mill Elevator & Light Co., 87 S.W. 753 (Tex.Civ.App., San Antonio 1905, no writ). However, this rule is not applied where evidence shows that the actual loss was less than the difference in market value. Missouri Pac. R. R. v. H. Rouw Co., 258 F.2d 445 (5th Cir. 1958); Missouri, K. & T. Ry. v. Witherspoon, 18 Tex.Civ.App. 615, 45 S.W. 424 (Fort Worth 1898, no writ).

In the present case defendant insists that it is not governed by the rules concerning common carriers because a warehouseman is not held to as high a responsibility as a common carrier, and also, since defendant was guilty of no delay in delivering the cotton, but only in filling orders to take certain cotton from storage, reweigh and resample it, and return it to storage, de-

fendant is not responsible for any decline in market value for the period of the delay.[1]

■ We cannot distinguish the common-carrier cases on this ground. None of the authorities above cited, or any others we have examined, take the carrier's strict liability as the basis of the market value rule of damages. That rule is rather an application of the general principle of contract damages, which is to give the plaintiff the benefit of his bargain by awarding him an amount that would put him in as good a position as if defendant had performed. Chicago, M. & St. P. Ry. v. McCaull-Dinsmore Co., supra. In Texas P. Ry. v. Nicholson, 61 Tex. 491, 497 (1884), the Supreme Court said that this measure of damages in suits against common carriers for delay, "does not proceed from the extraordinary care required of them by the common law, or any other stringent rules applied to them, but is equally binding upon any party who undertakes to do for another a specific thing within a specified time." The same measure of damages applies to a claim by a buyer against a seller for delay in delivery of goods sold. Richard v. American Union Bank, 253 N.Y. 166, 170 N.E. 532, 69 A.L. R. 667 (1930).

Defendant contends that the market value rule only fixes a limit to damages in cases of delay and does not relieve plaintiff of showing actual loss on ultimate disposition of the goods. It points to evidence that plaintiff did not dispose of the cotton in question immediately on receipt of the weights and samples, but sold and shipped it out of the warehouse over a period of several months at prices not shown by the evidence. Defendant argues that

the difference in market value was only a "paper loss".

■ We conclude that there is evidence of actual loss. Testimony shows that the cotton market is seasonal in that most of the trading takes place in the months following the harvest in late summer and fall, and that after textile mills and other users of cotton arrange for their year's supply, cotton remaining on hand is difficult to sell. In the early months of this particular season of 1967–68, users of cotton anticipated a scarcity and bought up the cotton they needed at high prices, but the crop turned out to be larger than forecast, so that there was a decided drop in the price after the first of January. Because of the abundance of new-crop cotton on the market, it was difficult to dispose of the older cotton at any price in late February and early March, when the reweighing and resampling was done, and also in the months following. Moreover, plaintiff's customers were textile mills, to whom plaintiff supplied cotton of certain specifications in accordance with their particular requirements. Plaintiff could not fill their orders with any of the 8,485 bales in question because accurate information concerning weights and grades was not available without reweighing and resampling. Consequently, plaintiff had to use other cotton to supply these customers, some of which had to be purchased on the market at current prices, and when the weights and samples from the bales in question were finally available in late February and March, other purchasers had to be found. In our opinion this evidence is sufficient to raise a jury issue of actual loss to plaintiff resulting from defendant's unreasonable delay in reweighing and resampling the cot-

---

1. We do not decide the question of whether in this kind of case decline in market value is not recoverable in the absence of notice at the time the contract was made that the cotton could not be sold until the reweighing and resampling was done, since both parties have treated the issue as one of general rather than special damages.

Plaintiff's president, Rufus McClung, testified that before plaintiff bought the cotton in question, which was already in defendant's warehouse, he told defendant's agent, "We have to know, we have got to get the samples because we have got sales for the cotton and I don't want to buy something I can't use."

ton, though the exact prices at which this cotton was sold were not established.

■ Moreover, evidence of decline in market value during the delay was sufficient to establish actual loss, at least prima facie. A dealer in commodities of fluctuating value is damaged by delay if he loses a favorable market. When the goods are finally available to him, he may sell and take his loss, or he may hold them at his own expense and risk and wait for an upturn in the price. If he decides to wait, any loss from further market decline will fall on him rather than on the wrongdoer who caused the delay, and any gain during such subsequent period should be his also. Jamal v. Dawood [1916], 1 AC 175 (Privy Council); 3 Williston, Sales § 582 at 242 (Rev.Ed.1948). *Cf.* Gonzalez v. Texas Feed & Grain Co., 328 S.W.2d 923 (Tex. Civ.App., Fort Worth 1959, writ ref'd n. r. e.). The law does not throw on the innocent owner the risk of subsequent loss resulting from market fluctuation and allow the wrongdoer the benefit of a subsequent gain. It awards damages measured by difference in market value during the period of the delay in order to put the owner in as good a position as he would have been if the contract had been performed on time.

Defendant cites Great Atl. & Pac. Tea Co. v. Atchison, T. & S. F. Ry., 333 F.2d 705 (7th Cir. 1964, cert. den. 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560), in support of its contention that proof of decline in market value does not establish actual damages. That case was a suit for damages for two days' delay in a shipment of plums from California to New York for sale in A. & P.'s retail stores. The trial was upon a stipulation from which the trial court found that the plums were sold at identical retail prices on Wednesday instead of Monday, and that there was no loss of profits because the court could not assume that A. & P. had no plums to satisfy customer demand on Monday and Tuesday. In affirming judgment for defendant on these findings, the court of appeals acknowledged that the market value rule was the usual measure of damages in such cases and that the burden of proving that it should not apply was on the carrier, but observed that this rule was merely a method to ascertain the actual damages and should not be applied when actual damages could be ascertained by other means. The precise holding is stated in the following language:

> "Proof of decline in wholesale price does not establish actual damage since the parties stipulated that A & P's daily price list issued to its retail stores 'did not move up or down in relation to changes in the wholesale market prices during that period.'"

■ The *A. & P.* case would be in point if the evidence here affirmatively showed that plaintiff promptly disposed of the 8,485 bales in question at prices as high as they would have brought if the weighing and sampling had been done without delay. Since there is no such evidence, we hold that proof of decline in market value for the period of the delay established prima facie the fact as well as the amount of actual damages, and that the burden then shifted to defendant to offer evidence that the actual loss was less than the amount of such decline.

■ This holding is supported by New York, L. E. & W. R. R. v. Estill, 147 U.S. 591, 13 S.Ct. 444, 37 L.Ed. 292 (1892), in which the Supreme Court applied the market value measure of damages to a claim for injuries to a shipment of cattle, and expressly held that plaintiff was not required to trace each animal and show the amount for which it was sold, though such evidence might have been brought out by defendant to contradict plaintiff's evidence of market value. Likewise, in Reider v. Thompson, 197 F.2d 158 (5th Cir. 1952), damages measured by difference in market value were allowed against a carrier for deterioration in a shipment of sheepskins, though the actual amount realized on ulti-

mate disposition was not shown, and the court said such amount could have been shown by the carrier as a defensive matter. Also, Gold Star Meat Co. v. Union Pac. R. R., 438 F.2d 1270 (10th Cir. 1971) holds that the burden is on the carrier to show that the market value rule will not result in a just measure of actual damages.[2] All these cases involved physical damage to the property shipped, but the same market value measure of damages applies. Texas P. Ry. v. Nicholson, 61 Tex. 491 (1884). We do not agree with the suggestion in the *A. & P.* opinion that these authorities can be distinguished, since we see no reason why plaintiff must prove the amount the property sold for in one case and not in the other.

### b. *Evidence of Market Value*

We turn now to defendant's "cross-points" complaining of the trial court's submission of difference in market value. Among the elements of damages submitted was subdivision (a) of issue 7, as follows:

"The difference, if any, between the cash market value of the 8,485 bales of cotton in question on the date such cotton should have been reweighed and re-sampled, if such service had been performed within a reasonable time and the cash market value of those bales of cotton when the samples and reweighs were delivered between February 23 and March 11, 1968."

Defendant's "Cross-Point Eight" complains that the trial court erred in overruling its objection that there was insufficient evidence to support the submission of this issue, and any affirmative finding of the jury thereto. We must construe this point as raising only the contention of legal insufficiency of the evidence to support sub-

mission of the issue rather than factual insufficiency to support the jury's answer, since the issue was properly submitted if there was any evidence to support an affirmative finding. Owens v. Rogers, 446 S.W.2d 865 (Tex.Sup.1969). Though the point is couched in the language of a cross-point complaining of the submission of the issue rather than a counterpoint in support of the judgment *non obstante veredicto,* we shall consider it as a counterpoint in the light of the brief as a whole, which contains no prayer or other suggestion that the case be remanded for a new trial.

Any way we consider this point, it must be overruled, since we find some evidence of a difference in market value. The material dates were established. Plaintiff's request for reweights and resamples was made on December 5, 1967. The jury found that a reasonable time for weighing and sampling the cotton was 28 days. This finding fixes January 2, 1968 as a reasonable time for performance by defendant. It was undisputed that the weights and samples were delivered between February 23 and March 12, 1968. On market value, the record contains the opinion testimony of Rufus McClung and Heinz Molsen, both cotton merchants of long experience. McClung testified that the market value of the cotton in question in Galveston in late December and early January was 18 cents a pound, and that its market value was 15 cents a pound in late February and early March. He figured the bales to weigh an average of 500 pounds and that a decline of 3 cents a pound would be $15 a bale, making a total reduction of $127,235 for the 8,485 bales. Molsen testified that the value of all grades of cotton receded in price about 2 cents a pound from early January to late February or early March, and continued falling after March, and

---

2. *Cf.* Fort Worth & D. Ry. v. United States, 242 F.2d 702 (5th Cir. 1957), holding that the measure of damages for loss of cottonseed products shipped by the government and lost by the carrier was the full market value of the products at the place of delivery, though the government intended to sell such products for livestock feed at about half the market value under an emergency drought relief program.

that the better grades declined by a greater amount.

Defendant attacks the sufficiency of this evidence on the ground that it was too general and did not relate to the exact quantity, quality and specifications of the 8,485 bales in question, or to the exact date of valuation, though the price was subject to daily fluctuation. Defendant insists that to determine the market value of a bale of cotton on a certain date it is necessary to know the exact weight and grade of the bale, the length, thickness and tensile strength of the fibres, and the price at which cotton of that particular specification was sold in the market on the particular day of valuation. Defendant says further that the evidence shows that adjustments should be made for brokerage fees, commissions, freight charges and "tare weights," which are deducted when the cotton is sold for export. Defendant would have us impose on plaintiff the burden to prove all these factors in order to establish the market value of each of the 8,485 bales in question on January 2, 1968 and again on the particular date between February 23 and March 12 when the weight and grade of that particular bale was furnished to plaintiff.

 In our opinion, plaintiff did not have such a burden in view of the testimony that the market value of all cotton declined at least 2 cents a pound between early January and late February, and that higher grades declined even more. The "tag list" showing the weights of the bales as determined by defendant was in evidence and available for examination by the jury. The jury also had figures for freight charges, brokerage fees, commissions and "tare weights." Although the opinion testimony concerning market value was in the nature of an estimate or approximation, this is the usual nature of valuation testimony. No rebutting evidence of market value was offered by defendant. We hold that the opinion evidence of market value, together with the testimony concerning general market con-

ditions during the period in question, was sufficient to support submission of the issue of the difference between the market value on the date the cotton should have been weighed and sampled and the market value when the weights and samples were actually delivered to plaintiff.

 Defendant's "Cross-Point Nine" is that the trial court erred in overruling its objection to the issue on difference in market value on the ground "that the submission of said Special Issue was against the great weight and preponderance of the evidence." We overrule this cross-point because even if a finding adverse to defendant would have been contrary to the overwhelming weight and preponderance of the evidence, that would not establish error in submission of the issue, since the trial court must submit the issue if there is any evidence to support an affirmative finding. Defendant could not raise this question by objecting to submission of the issue, but only after verdict. Strauss v. LaMark, 366 S.W.2d 555 (Tex. Sup.1963). In view of the judgment for defendant *non obstante veredicto*, defendant was not required to file a motion for new trial to attack the verdict on this ground, but could do so by cross-points in its brief under Texas Rules of Civil Procedure, rule 324. However, we cannot construe defendant's "Cross-Point Nine" as raising this contention, since there is no prayer that the case be remanded for a new trial on this ground if the judgment *non obstante veredicto* is reversed. Moreover, defendant would have difficulty in showing that the jury's finding on this issue is against the overwhelming preponderance of the evidence, since the finding is based on the opinion testimony of plaintiff's witnesses, and defendant offered no evidence to rebut such testimony.

c. *Authority of Defendant's Agent*

 Plaintiff's second and third points assert that the trial court erred in disregarding the findings of the jury that Wil-

liam Brown had actual and apparent authority to act for defendant in making a contract with plaintiff that the cotton in question would be reweighed and resampled within three weeks after a request to do so. These points are overruled. In view of our sustaining plaintiff's eighth point and our holding that plaintiff is entitled to recover on its alternative plea that defendant failed to reweigh and resample the cotton within a reasonable time after such a request, the findings concerning the express contract affect only the amount of damages to the extent of storage charges and interest for the seven days' difference between the contract period of three weeks and the 28 days found by the jury to be a reasonable time. We hold without further discussion that the jury's findings on these issues were properly disregarded because the evidence does not raise an issue of either actual or implied authority of Brown to make such a contract for defendant.

#### d. *Liability of Surety*

Plaintiff's ninth point asserts that the trial court erred in instructing a verdict in favor of American Indemnity Company, the surety on defendant's warehouseman's bond. This point is sustained. The bond is conditioned that defendant as principal "shall well and truly perform and fulfill all of its duties as a public warehouseman, and all of its obligations under any warehouse agreement * * * with respect to cotton held by Commodity Credit Corporation or * * * persons who have purchased such cotton and cotton linters from Commodity Credit Corporation, * * *."

Plaintiff argues that since weighing and sampling the cotton was a service offered to customers at fixed charges set out in defendant's tariff, the delay in question was a breach of its duties under its contract of storage with Commodity Credit Corporation and with plaintiff as a purchaser of the cotton in question from Commodity Credit Corporation, and the language of the bond is sufficient to cover plaintiff's damages for delay in performing that obligation. The surety contends that the bond does not impose liability on it for damages from mere delay in the performance of obligations to persons who buy Commodity Credit Corporation cotton, but only for failure and refusal to perform such obligations at all. We hold that the duty to perform the service includes the duty to perform within a reasonable time, and that the time of performance as well as the act of performance is a duty secured by the bond. Consequently the trial court judgment in this respect must be reversed, and, since the surety was a party to this suit, and presented no separate defense to its liability on the bond, it is bound by the judgment against the principal defendant, even though it was dismissed from the case on its motion for instructed verdict before submission to the jury.

#### 2. *Defendant's Appeal*
##### a. *Storage Charges*

We turn now to defendant's appeal. Defendant's first point asserts that the trial court erred in overruling its motion for judgment notwithstanding the jury's finding that plaintiff had incurred storage charges of $7,356 because of the delay. Defendant pleaded that plaintiff paid these charges voluntarily after the cotton had been removed from the warehouse with full knowledge that they covered storage for the period when the cotton had not been reweighed and resampled.

The evidence shows that about February 3, 1968, Rufus McClung asked defendant's president John Gallagher whether he was going to continue the storage charges on the unsampled cotton, and Gallagher replied that he was. McClung then said "You've got a lawsuit on your hands." On February 28 plaintiff's counsel sent a letter to defendant advising that plaintiff was claiming damages and expenses for the delay, including storage charges. Later, when the cotton was sold, defendant did

not require plaintiff to pay the storage charges before delivering the cotton but shipped it out on plaintiff's orders and billed plaintiff for the charges. Plaintiff's secretary-treasurer paid these bills by checks in the usual manner of paying bills. Other cotton belonging to plaintiff was in defendant's warehouse at the time, but plaintiff does not show that defendant had a lien on the other bales for the charges in question or that defendant made any threat to hold the other bales for these charges.

■ We hold that payment of the charges under the circumstances does not prevent recovery of such charges as an element of damages for delay. Consequently, we overrule the first point on defendant's appeal.

■ We recognize the general rule that money voluntarily paid with full knowledge of all the facts,[3] and without fraud or coercion, cannot be recovered back, though it was paid on a void demand, or on a claim having no foundation in fact, and was paid without consideration. Runcie v. Runcie, 407 S.W.2d 861 (Tex.Civ. App., Amarillo 1966, writ ref'd n. r. e.); Gibson v. General American Life Ins. Co., 89 S.W.2d 1070 (Tex.Civ.App., El Paso 1936, writ dism'd). The rationale of this rule is that a party who pays a claim is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist. He should not pay out his money, leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back. Neither should he be allowed to avoid the inconvenience of immediate litigation by paying a claim and reserve to himself the privilege of suing for the money at a time and under circumstances of his own choosing, when his adversary may

be at a disadvantage because of unavailability of records and witnesses. Thompson v. Shoemaker, 7 N.C.App. 687, 173 S.E.2d 627 (1970); American Motorists Ins. Co. v. Shrock, 447 S.W.2d 809 (Mo.App.1969); Brisbane v. Dacres, 5 Taunt. 143, 128 Eng.Rep. 641 (Ex.1813).

■ However, the rule against recovery of voluntary payments is not applied rigidly in cases where the reasons for the rule do not exist. In some cases the payor is allowed to recover the money if he clearly never intended to surrender his position. Thus, in West Texas State Bank v. Tri-Service Drilling Co., 339 S.W.2d 249 (Tex.Civ.App., Eastland 1960, writ ref'd n. r. e.), a borrower from a bank paid a renewal note with knowledge that the bank had diverted a substantial portion of the proceeds of the original loan to an unauthorized purpose. The court held that notwithstanding such payment, the borrower was entitled to recover the money diverted by the bank because the evidence showed that he continued to insist on restoration of the funds and never intended to waive his claim. Likewise, in Prigmore v. Hardware Mutual Ins. Co., 225 S.W.2d 897 (Tex.Civ.App., Amarillo 1949, no writ), monthly checks inadvertently sent out from an insurance company to its former agent after his employment had been discontinued were held to be sufficient consideration to support a note signed by him, and the payments were held not voluntary, though the checks were sent out because of the negligence of some employee. Texas courts also hold that a bank which inadvertently or negligently pays a check which it has been notified not to pay may recover from the payee. First-Wichita National Bank v. Steed, 374 S.W.2d 932 (Tex.Civ. App., Fort Worth 1964, no writ); Capital Nat. Bank in Austin v. Wootton, 369 S.W. 2d 475 (Tex.Civ.App., Austin 1963, no writ).

---

3. Since plaintiff does not claim that the payments were made under a mistake of fact, the question before us is not like the questions in Benson v. Travelers Ins.

Co., 464 S.W.2d 709 (Tex.Civ.App., Dallas 1971, no writ) and Hodges Food Stores v. Gulf Ins. Co., 441 S.W.2d 309 (Tex.Civ.App., Dallas 1969, no writ).

Here, as in the cases cited, it is clear that plaintiff had no intention to give up any part of his claim for damages when its secretary-treasurer paid defendant's bills for storage charges. Plaintiff made its claim for damages for delay, expressly including the storage charges, before these charges were paid, and has continued to assert that claim. It filed suit on May 1, 1968, less than two months after defendant delivered the last weights and samples to plaintiff. Since the evidence shows that several months elapsed before all of the 8,485 bales were shipped out, it appears that some if not most of the charges were paid after the suit was filed. These charges were a relatively small part of the entire claim for damages. Defendant was not put at a disadvantage. Defendant's position is no worse than it would be if plaintiff had withheld payment of that part of the charges attributable to the delay and had cast on defendant the burden to establish such charges by way of counterclaim.

This is not a case like Ladd v. Southern Cotton Press & Mfg Co., 53 Tex. 172 (1880), which was a suit to recover storage charges voluntarily paid on the ground that the charges were excessive, and therefore not rightfully due. Rather it is a case in which plaintiff seeks to recover damages for delay, and claims as a part of such damages its expenses for storage during the period of the delay. The charges themselves are not disputed. Presumably they were correctly calculated on the basis of defendant's established rates for the time the 8,485 bales of cotton were admittedly in defendant's warehouse. The question of whether plaintiff should recover the amount of such charges as damages for delay does not turn on whether the charges themselves were properly assessed and demanded, but rather on whether they were expenses incurred by plaintiff because of defendant's breach of contract and should be included in plaintiff's damages in order to put plaintiff in as nearly as possible the same position as plaintiff would have been in if no delay had occurred. Essentially,

the situation is no different than it would be if the cotton had been stored with a third person.

We must consider here not only the rule against recovery of voluntary payments but also the rule that damages for breach of contract should be assessed in an amount sufficient to compensate for the full amount of the loss. For the reasons stated we hold that the latter rule rather than the former is controlling.

### b. *Interest*

■ The second point on defendant's appeal complains of the trial court's overruling its motion for judgment *non obstante veredicto* as to interest charges of $6,365 on the ground that such interest charges were special damages arising from circumstances not in contemplation of the parties when the contract was made. We overrule this point because we hold that plaintiff was entitled to interest on the value of the cotton for the period of the delay at the legal rate of six per cent per annum as general damages, and defendant has not shown that the amount of interest charges found by the jury was more than the interest would be if figured at the legal rate.

Although defendant may have had no notice of any particular financing arrangements plaintiff had made in order to buy the cotton in question, plaintiff's evidence shows that defendant knew plaintiff had intended to sell the cotton when it was reweighed and resampled. Failure to furnish the weights and samples within a reasonable time deprived plaintiff of the money it would have realized from sale of the cotton for the period of the delay. Plaintiff is entitled to be put in as near as may be the same position it would have occupied if defendant had furnished the weights and samples within a reasonable time, and in order to put plaintiff in this position plaintiff must be awarded interest on the value of the cotton at the legal rate of six per cent for the period of delay in addition to

the difference in market value. Whether plaintiff actually borrowed money to buy the cotton or used its own capital for that purpose is immaterial.

This holding is supported by Houston & T. C. Ry. v. Jackson, 62 Tex. 209 (1884), which was a suit for delay in transporting cotton. The trial court awarded damages including the difference in market value and also interest for the period of delay at twelve per cent, which was the rate the owner had to pay. The Supreme Court held that the owner was entitled to interest as damages for the delay in addition to the difference in market value because he had been deprived of the proceeds of the sale for that period, and the carrier was presumed to have known that the owner intended to convert the cotton into money. However, the court refused to permit recovery of the actual interest paid, and reduced the amount of interest allowed in the judgment by one-third to the amount produced by the statutory legal rate, which was then eight per cent. This amount was allowed even though the petition had no general prayer for interest. Another decision supporting recovery of interest at the legal rate on the value of the property for the period of the delay, though plaintiff claimed a greater amount, is Dorrance & Co. v. International & G. N. R. R., 103 Tex. 200, 125 S.W. 561 (1910).

■ Under these authorities, defendant cannot be charged with any particular contract rate of interest paid by plaintiff in excess of the legal rate in the absence of notice to defendant at the time the contract was made of the particular rate of interest plaintiff was required to pay. However, in order to show harm from the amount of interest allowed, defendant has the burden to show that the judgment for interest charges of $6,365 is more than interest at the legal rate would have amounted to for the period of the delay. Plaintiff alleged that the interest it had to pay because of the delay was $9,407, and plaintiff's testimony was that this amount was figured at

6¾ per cent on the money borrowed from December 26 until the weights and samples were delivered. We find no evidence in the record that the amount of $6,365 found by the jury and allowed by the court amounted to more than six per cent.

### c. *Reasonable Time*

■ The third, fourth and fifth points in defendant's appeal assert that the trial court erred in overruling its motion to disregard the jury's answers to issues 6, 8 and 17. These findings were (6) that a reasonable time for reweighing and resampling the 8,485 bales was 28 days after plaintiff's request of December 5, 1967, (8) that defendant did not reweigh and resample the cotton within a reasonable time after such request, and (17) that the circumstances and conditions at defendant's warehouse from December 5, 1967 to March 12, 1968, were not causes beyond defendant's control which resulted in delays in the reweighing and resampling of plaintiff's cotton. Defendant relies on a provision in its tariff that it is "not liable for any delays or other consequences, which may result from work stoppage, riots, fires, floods or other causes beyond our control." Defendant's evidence shows that it had difficulty in getting labor during the period in question and that the workmen it hired were inexperienced and inefficient. There was also evidence of an unusually high level of movement of cotton into and out of the warehouse, but defendant's manager admitted that the delay would not have occurred if efficient workmen had been available.

We overrule these points. The tariff provision in question cannot be construed to throw upon defendant's customers the risk of loss from the inexperience and inefficiency of defendant's own employees. Moreover, there was evidence that during the period when defendant was having difficulty giving plaintiff's reweigh and resample orders the prompt attention which plaintiff was demanding, defendant actively solicited shipments of new-crop cotton

into the warehouse, which it gave priority in weighing and sampling. We conclude that the evidence amply supports the findings in question.

### Judgment

Insofar as the trial court rendered judgment for plaintiff on the verdict of the jury, that judgment is affirmed. Insofar as the court rendered judgment for defendant Cotton Concentration Company notwithstanding the jury's answer to subdivision (a) of issue 7, that judgment is reversed and judgment is here rendered for plaintiff against such defendant for the damages as found in answer to that issue. Insofar as the trial court rendered judgment in favor of American Indemnity Company, that judgment is reversed and judgment is rendered in plaintiff's favor in the same amount as against the principal defendant.

Affirmed in part, and reversed and rendered in part.

## ON MOTION FOR REHEARING

Defendant's motion for rehearing complains of our ruling that proof of decline in market value for the period of the delay establishes plaintiff's damages prima facie, and that the burden shifted to defendant to show that the amount of plaintiff's loss was less than such decline. Defendant insists that it has been deprived of due process because it had no information as to whether plaintiff actually lost profits when it sold the cotton and the trial court refused to permit cross-examination of plaintiff's chief witness, Rufus McClung, in this respect.

The claim of denial of due process fails for several reasons.

*First.* This contention is another form of defendant's principal argument that plaintiff's loss must be determined by loss of profits rather than by decline in market value. We adhere to the views expressed in our original opinion. Since the action is in contract, plaintiff is entitled to have its loss determined by the contract measure of damages, that is, it is entitled to be put in as good a position as if defendant had performed promptly. Whether plaintiff made a profit or loss on sale of a particular bale of cotton is immaterial to a damage question. If plaintiff bought a bale in December for $850 and would have sold it in January at its market value of $900 if defendant had weighed and sampled it promptly, but had to sell it in March when it first became available for sale, for $750 because of decline in market price, the amount of plaintiff's damage is not $100 but $150. This damage is not theoretical, but the actual amount necessary to put plaintiff in the position he would have been in if defendant had performed promptly. Furthermore, if plaintiff decides not to sell in March for the price then prevailing, but to wait for a better market, and sells in June, the correct amount of damages is still $150, whether the actual sale price is $800 or $700. Since the owner takes the risk of subsequent loss from market fluctuation, he, rather than the wrongdoer, should get the benefit of subsequent gain. In this connection plaintiff's transactions with respect to cotton other than the cotton in question are immaterial.

We have held that decline in market value is prima facie evidence of damages for delay in performance rather than the controlling measure because the owner may not choose to take the risk of further price fluctuation. If he decides not to wait for a better market, but sells promptly for the best price obtainable, his loss is the difference between the market value when performance was due and the actual sale price, even if that price is above current market quotations.[1] Defendant would have

---

1. The case is analogous to one in which a buyer of goods wrongfully refuses to accept them. The seller has a choice of remedies. Under the decisions, he is not limited to a recovery based on the actual amount he realizes from a sale to another

been entitled to present this kind of evidence to show that plaintiff's loss was less than the market value, but it made no attempt to do so.

*Second.* The record fails to show that defendant was deprived of the right to present any relevant evidence. The cross-examination to which objection was sustained did not inquire into the amount for which the cotton was sold, but concerned plaintiff's profit for the entire 1967–68 season. Plaintiff's overall profit for the year would have no bearing on the question of whether plaintiff sustained a loss because of defendant's delay in weighing and sampling the particular cotton. Defendant has not called our attention to anything in the record showing that it has been denied the right to prove the price at which the cotton was sold, even if the sale price were relevant. Whether such evidence would be relevant would depend on various factors, such as whether the sale was too remote in time.

█ *Third.* Defendant had the opportunity to raise here by cross-point any ground that would require a new trial rather than rendition of judgment on the verdict, but has failed to do so. Upon the record as it comes to us, we cannot remand for a new trial for improper restriction of defendant's right to cross-examine or for exclusion of any relevant rebutting evidence. If the trial court erred in that respect, but then rendered judgment *non obstante veredicto* in defendant's favor, defendant was not required to file a motion for new trial, but it was required under Tex.R.Civ.P. 324 to raise this ground by cross-point in its brief in this court. By the express provision of that rule, failure to bring forward by cross-points such grounds as would vitiate the verdict is deemed a waiver of such grounds. Consequently no denial of due process is shown.

Defendant contends further that even under the market value measure of damages plaintiff has failed to prove its damages because its evidence does not allow for commissions, brokerage fees, freight charges, tare weights, etc. Figures for these factors were before the jury, and defendant quotes some of them in its motion. If we understand defendant's argument correctly, it is not that these factors were not proved, but rather that the jury did not deduct them in figuring the damages. In this connection defendant points out that the damages found by the jury amount to exactly 2½ cents per pound for 8,485 bales at 500 pounds a bale. Defendant does not point to any evidence that brokerage and commission charges in March would have varied from those in January. The weights of each bale and the tare weights were before the jury for its consideration in determining whether the net weight of the bales averaged as much as 500 pounds. The jury's failure to make deductions for these factors would raise at most a question of excessiveness of the damages, rather than one of no evidence of damages, and no cross-point complaining of excessiveness has been presented to us.

Defendant repeats its argument that under the market value measure, the value of each individual bale must be established according to its particular specifications, and that evidence of actual sales rather than opinion evidence is required to establish the market value. No authority is cited in support of this argument. Defendant's objections in these respects go to the weight of plaintiff's evidence rather than competency to prove damages. We hold only that the evidence before the jury was some evidence to support the verdict.

█ Finally, defendant contends that in allowing plaintiff recovery of interest as general damages on the value of the cotton

buyer, but may treat the goods as his own and recover damages based on the market price at the time and place fixed for delivery. Waples v. Overaker, 77 Tex. 7, 13 S.W. 527 (1890); Marion v.

Bowers, 371 S.W.2d 575 (Tex.Civ.App., Amarillo 1963, no writ, per Denton, C. J.). Cf. Tex.Bus. and Com.Code § 2.708 (1968), V.T.C.A.

for the period of delay as well as decline in market value we have allowed a double recovery because interest, if recovered as general damages, is the sole measure of the loss. This contention also is overruled. These are two separate items of damage. If plaintiff's sale of the cotton was delayed from January to March because defendant failed to furnish weights and samples promptly, plaintiff was entitled to interest for the period of delay even if no market decline had occurred, since it was deprived of the proceeds of sale of the cotton for that period. As we held in the original opinion, plaintiff is limited to the legal rate of interest unless it actually paid interest at a higher rate and defendant had notice that such higher interest would be paid. Regardless of whether the recovery of interest was at the legal or some higher rate, plaintiff has not only been deprived of the proceeds of the sale for the period of delay, for which interest is proper compensation, but has an additional loss in that the amount for which it could sell the cotton has been reduced. Both items of damage are recoverable.

Motion for rehearing overruled.